In the Matter of the Determination of the Relative Rights in and to the Waters of Horse Springs, W. DALTON LA RUE, Sr. and JUANITA S. LA RUE, dba WINNEMUCCA RANCH, Appellants, *v.* STATE ENGINEER, STATE OF NEVADA, ROBERT W. MARSHALL and NANETTE MARSHALL, ROBERT DICKENSON and DOROTHY DICKENSON, dba INTERMOUNTAIN LAND CO., Respondents.

No. 14112

November 10, 1983                    671 P.2d 1131

*Johnson & Adams,* Reno, for Appellants.

*Brian McKay,* Attorney General, *George Campbell* and *Linda Bailey,* Deputy Attorney Generals, Carson City; *Vargas & Bartlett,* Reno, for Respondents.

## OPINION

*Per Curiam:*

Thirty miles north of Reno gurgles Horse Springs, which rises and dies on property known as Winnemucca Ranch, owned by appellants. Horse Springs is the only water source high up on the northwest face of Tule Mountain, which essentially divides appellants' ranch from the property owned by Marshall and Dickenson (respondents). Respondents' predecessors requested that the state engineer determine the relative rights of claimants to Horse Springs. The state engineer's Order of Determination, issued pursuant to NRS 533.090, gave each party a vested annual stock watering right for fifty head of cattle for the period March 15 to December 15. The Second Judicial District Court, among other things, affirmed that order, thereby prompting the instant appeal.

A "vested right" in the context of water law applicable to this case means "water rights which came into being by diversion and beneficial use prior to the enactment of any statutory water law, relative to appropriation." Application of Filippini, 66 Nev. 17, 22, 202 P.2d 535, 537 (1949). It is not always essential, however, that the water actually be diverted "to constitute an appropriation . . . where it could be put to a beneficial use without such diversion, where there was a practice of appropriating the waters of the streams to a beneficial use without such diversion, . . ." Steptoe Live Stock Co. v. Gulley, 53 Nev. 163, 173, 295 P. 772, 775 (1931). The utilization of water by grazing livestock, therefore, constitutes sufficient appropriation to establish a vested water right. *See id.* at 173-76; Hunter v. United States, 388 F.2d 148 (9th Cir. 1967). Our review of the record reveals substantial evidence reflecting the fact that historically cattle from the ranches now owned by the parties have continuously shared the springs.[1] We therefore conclude that the district court did not err in upholding the state engineer's Order declaring respondents' vested right to share in the water of Horse Springs.

Because there were no fences separating the area's ranches in earlier times, predecessors' cattle often intergrazed near Horse Springs. In 1957 Elmor Hill (appellants' predecessor) and the Matley brothers (respondents' predecessors) sought to remedy the intergrazing problem and all past range controversies by a

---

[1]Both parties concede that Horse Springs flows sufficiently for each party to water fifty head of cattle.

written, though unrecorded, agreement to build a range division fence and divide the water from Horse Springs. The fence was built across Hill's deeded property along a line flagged by Hill himself. The springs were piped into a three-barrel trough on Hill's side of the fence, then the overflow was piped to 4½- and six-barrel troughs on Matleys' side. A year or two after appellants purchased the Winnemucca Ranch, they visited Horse Springs, which is not easily accessible. Upon discovering the fence and divided springs, appellants dismantled the water division works, plugged the pipe, and removed the fence to the eastern boundary of their deeded property line.

The district court, with manifest uncertainty, decided that appellants were on inquiry notice regarding the unrecorded Matley-Hill Agreement and, therefore, bound by that contract. Citing Snow v. Pioneer Title Ins. Co., 84 Nev. 480, 444 P.2d 125 (1968), the lower court observed that "when La Rue went on the premises he must have been well aware of the water works at Horse Springs. Under those circumstances, is he not put on notice?" Snow, however, had actual knowledge of improvements which should have led him to inquire about the prior unrecorded instrument. The record in the instant case, contrarily, indicates that appellants had no express actual knowledge of the fence and water works at Horse Springs until long after they had purchased the ranch. *Snow* therefore is inapposite.[2] In this respect the district court's decision must be reversed. The respondents' vested rights, in any event, remain intact.

Believing that appellants were bound by the Matley-Hill Agreement, the lower court ordered them to restore the fence and water works to their former condition and location. The former fence line, however, unfairly restricts appellants' access to their deeded property when they are not bound to the former agreement. Because respondents only prayed for access to Horse Springs in accordance with their vested rights and the

---

[2]Even if we were to determine that appellants had implied notice of the fence and troughs, thus giving rise to a duty to inquire, such notice and inquiry more rationally would have revealed the possible existence of an adverse use or claim of right to the use of the overflow water from Horse Springs as opposed to an unrecorded agreement between two former owners of the involved properties. To our knowledge, there has never been an asserted right to that area of appellants' land which became accessible only to respondents' cattle by reason of the fence. Indeed, respondents' counsel conceded in oral argument that respondents had no right or entitlement to the fenced-off portion of appellants' land.

issue of access was, as the district court admitted, "not dis-- cussed by the principles [sic]," the order requiring restoration of the fence amounts to a taking of property without compensation, prior notice or hearing. Lonkey v. Keyes Silver Mining Co., 21 Nev. 312, 321, 31 P. 57, 60 (1892). Respondents admit that access can be achieved without depriving appellants of the use of their property.[3] The district court's order that the fencing be restored to its former line is, therefore, reversed. We remand this case to the lower court, however, to determine whether a diversion works and pipeline will allow respondents to utilize their water rights. If this is possible, then respondents' access to appellants' property will be limited to that access necessary to construct and maintain the diversion works and pipeline.

---

[3]Respondents claim that a 300- to 400-foot pipe (the cost of which respondents have agreed to bear) could carry water, by gravity feed, from Horse Springs to the boundary of appellants' deeded property. If troughs of former sizes are employed, respondents will be restored to their former position with respect to water use.