THE STATE OF NEVADA; NEVADA STATE BOARD OF AGRICULTURE, Appellants, *v.* PETER G. MORROS, STATE ENGINEER, NEVADA DIVISION OF WATER RESOURCES; UNITED STATES OF AMERICA, on Behalf of the BUREAU OF LAND MANAGEMENT, DEPARTMENT OF THE INTERIOR; NEVADA WILDLIFE FEDERATION and SIERRA CLUB, Respondents.

PETER G. MORROS, STATE ENGINEER, NEVADA DIVISION OF WATER RESOURCES; UNITED STATES OF AMERICA, on Behalf of the BUREAU OF LAND MANAGEMENT, DEPARTMENT OF THE INTERIOR and the UNITED STATES FOREST SERVICE, DEPARTMENT OF AGRICULTURE; NEVADA WILDLIFE FEDERATION and SIERRA CLUB, Cross-Appellants, *v.* THE STATE OF NEVADA; NEVADA STATE BOARD OF AGRICULTURE; JAMES J. WRIGHT; SMITH BROTHERS' OX RANCH; WM. MAX SPRATLING; W. E. ROUSE; WARM CREEK RANCH; ELKO COUNTY, a Political Subdivision of the State of Nevada; MOUNTAIN STATES LEGAL FOUNDATION; NEVADA WOOLGROWERS ASSOCIATION; NEVADA CATTLEMEN'S ASSOCIATION and HUMBOLDT COUNTY, a Political Subdivision of the State of Nevada, Cross-Respondents.

No. 18105

December 21, 1988                    766 P.2d 263

*Brian McKay,* Attorney General, and *Harry W. Swainston,* Deputy Attorney General, Carson City, for Appellants/Cross-Respondents The State of Nevada and Nevada State Board of Agriculture.

*Christopher H. Meyer,* Boulder, Colorado, for Respondent/Cross-Appellant Nevada Wildlife Federation.

*Hill, Cassas, de Lipkau & Erwin,* Reno, for Respondent/Cross-Appellant Peter G. Morros, State Engineer.

*Robert L. Klarquist,* Washington, D.C., for Respondent/Cross-Appellant United States of America.

*David A. Hornbeck,* Reno, for Respondents/Cross-Appellants Nevada Wildlife Federation and Sierra Club.

*Laurens H. Silver,* San Francisco, California, for Respondent/Cross-Appellant Sierra Club.

*Jones, Jones, Close & Brown* and *Charles McCrea,* Las Vegas; *P. Michael Marfisi,* Elko; and *Eric Twelker,* Denver, Colorado, for Cross-Respondent Mountain States Legal Foundation.

*Wilson & Barrows,* Elko, for Cross-Respondents James J. Wright, Smith Brothers' Ox Ranch, Wm. Max Spratling, W. E. Rouse, Warm Creek Ranch, Nevada Woolgrowers Association, and Nevada Cattlemen's Association.

*Mark D. Torvinen,* District Attorney, Elko County, for Cross-Respondent Elko County.

*Jack T. Bullock,* District Attorney, Humboldt County, for Cross-Respondent Humboldt County.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court affirming the Nevada State Engineer's grant of an application by the United States for a water right and a cross-appeal from the district court's order reversing the state engineer's grant of applications by the United States for certain other water rights.

### STATEMENT OF FACTS

In a ruling issued on July 26, 1985, the Nevada State Engineer issued a ruling granting a number of appropriative water right applications of the United States Bureau of Land Management (BLM) and overruling protests to those applications. The ruling

approved a number of applications to appropriate water for stock-watering and wildlife watering purposes and an application to appropriate the waters of Blue Lake, a natural lake in Humboldt County, Nevada, for public recreation and fishery purposes. On October 4, 1985, the state engineer issued a ruling granting applications of the United States Forest Service (Forest Service) for appropriative water rights for recreation, stockwatering and wildlife watering purposes. The engineer's decision overruled protests to a number of the applications for stock and wildlife watering purposes.

The Attorney General of Nevada, on behalf of the Nevada State Board of Agriculture (Board of Agriculture), and other parties sought judicial review of the state engineer's decisions. In an order entered on February 5, 1987, the district court upheld the state engineer's approval of the Blue Lake application, but reversed his decisions approving the applications to appropriate water for stockwatering and wildlife watering purposes.

The Board of Agriculture appeals the portion of the district court's order affirming the state engineer's grant of the Blue Lake application. The state engineer cross-appeals the portion of the district court's order reversing his grant of the stock and wildlife watering applications. The state engineer is joined by the United States of America, on behalf of the United States Bureau of Land Management and the United States Forest Service, and by the Nevada Wildlife Federation and the Sierra Club. The Board of Agriculture appears as cross-respondent and is joined by several parties.

## THE BLUE LAKE APPLICATION

The Blue Lake application is for a water right to the waters of Blue Lake *in situ,* in place as a natural body of water. The BLM manages the land surrounding the lake and desires this water right to assure maintenance of the pool of Blue Lake for public recreation and fishery purposes. The Board of Agriculture contends that Nevada water law absolutely requires a physical diversion of water to obtain a water right, and that the district court therefore erred in affirming the state engineer's grant of a right to the water of Blue Lake *in situ.*

Water appropriation in Nevada is governed by statute. NRS 533.030(1).[1] *See generally* NRS Chapters 533 and 534. Water may be appropriated only after obtaining a permit from the state engineer. *See* NRS 533.325. In reviewing the district court's

---

[1]NRS 533.030(1) provides: "Subject to existing rights, all water may be appropriated for beneficial use as provided in this chapter and not otherwise."

decision we are mindful of the statutory provision that "[t]he decision of the state engineer shall be prima facie correct, and the burden of proof shall be upon the party attacking the same." NRS 533.450(9). We have previously held that "[a]n agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action" and that "great deference should be given to the agency's interpretation when it is within the language of the statute." Clark Co. Sch. Dist. v. Local Gov't, 90 Nev. 442, 446, 530 P.2d 114, 117 (1974). While not controlling, an agency's interpretation of a statute is persuasive. Nevada Power Co. v. Public Serv. Comm'n, 102 Nev. 1, 4, 711 P.2d 867, 869 (1986).

The Board of Agriculture contends that the fact that an application for a permit to appropriate water must contain a description of the proposed location and means of diverting water indicates that a physical diversion is required to appropriate water in Nevada. *See* NRS 533.335(5) and (6). Respondents argue that under NRS 533.035, which provides that "[b]eneficial use shall be the basis, the measure and the limit of the right to the use of water," beneficial use is the only essential requirement for water appropriation in Nevada. Respondents assert that the contents of an application specified in NRS 533.325(5) and (6) serve only informational purposes.

After carefully considering the parties' arguments and the relevant statutory provisions and authorities, we conclude as follows. The legislature explicitly defined the scope of the right to appropriate water when it enacted NRS 533.035. That provision specifies that beneficial use is "the basis, the measure and the limit of the right to the use of water." NRS 533.335, on the other hand, lists information that must be provided in an application to appropriate water; it is directed to informational purposes. We cannot derive an absolute diversion requirement from NRS 533.335(5) and (6) when no such requirement appears in the NRS 533.035 definition of the scope of the right to appropriate water. Accordingly, we conclude that no absolute diversion requirement precludes the granting of an *in situ* water right to the water of Blue Lake. The following considerations are relevant to our decision.

The Board of Agriculture cites Prosole v. Steamboat Canal Co., 37 Nev. 154, 140 P. 720 (1914) as authority for the existence of an absolute diversion requirement. In *Prosole* this court stated that both diversion and application to beneficial use were required to appropriate water. *Id.* at 160, 140 P. at 722. *Prosole,*

however, involved an appropriation that occurred prior to the enactment of the statutory water law. The *Prosole* court did not derive these requirements from the statutes. Consequently, *Prosole* is not good authority for interpreting the statutes on this issue.

This court has defined a vested water right as "a right to use water [that] has become fixed *either* by actual diversion and application to beneficial use *or* by appropriation according to the manner provided in the water law. . . ." Application of Filippini, 66 Nev. 17, 22, 202 P.2d 535, 537 (1949) (emphasis added). *Filippini* indicates that the statutory requirements are distinct from the requirements for water appropriation in effect before enactment of the Nevada Water Law Act in 1913. Furthermore, it is evident that the statutory scheme requiring appropriators to obtain permits from the state engineer superseded a primary purpose of any pre-statutory diversion requirement, providing notice of an appropriation to other water users on a watercourse.

This court opined in Steptoe Live Stock Co. v. Gulley, 53 Nev. 163, 172, 295 P. 772, 774 (1931) that beneficial use was the only indispensable requirement to appropriate water, and that any pre-statutory diversion requirement arose from the practical necessity for a diversion in agriculture, mining and similar uses of water. The court stated that under certain conditions it could recognize an appropriation of water without a diversion when no diversion was needed to put the water to beneficial use. *Id.* at 173, 295 P. at 774-5.

Respondents argue that the lack of a diversion requirement for stockwatering appropriations· belies an absolute diversion requirement for water appropriation. The Board of Agriculture responds that stockwatering constitutes a diversion, although not by mechanical means. The Board of Agriculture correctly maintains that stockwatering appropriation without mechanical diversion was established by practical necessity and longstanding custom and is specifically permitted by statute and by decisions of this court. *See* NRS 533.485 to 533.510; Waters of Horse Springs v. State Engineer, 99 Nev. 776, 671 P.2d 1131 (1983); *Steptoe Live Stock Co.,* 53 Nev. 163, 295 P. 772.

The absence of a diversion requirement for stockwatering appropriation reflects the lack of a practical need for a physical diversion in order to water livestock. Consequently, the Nevada water law conformed to the practical demands of stockwatering. *See Steptoe Live Stock Co.,* 53 Nev. 163, 295 P. 772. Many recreational uses of water also do not demand a physical diversion of water. Nevada water law likewise conformed to the practical necessities of recreation as a use of water.

In 1969 the legislature enacted NRS 533.030(2), which recognizes recreation as a beneficial use of water.[2] Diversions are not needed for and are incompatible with many recreational uses of water. Therefore, enactment of NRS 533.030(2) mandates recognition of *in situ* water appropriation for recreation. *See* McClellan v. Jantzen, 547 P.2d 494, 496 (Ariz.Ct.App. 1976) ("when 'wildlife, including fish' and . . . when 'recreation' were added to the purposes for appropriation, the concept of *in situ* appropriation of water was introduced—it appearing to us that these purposes could be enjoyed without a diversion"). *See also* State, Dept. of Parks v. Idaho Dept. of Water Admin., 530 P.2d 924, 929 (Idaho 1974).

The Board of Agriculture also contends that the grant of a water right for Blue Lake to a United States agency is against the public interest in Nevada and that pursuant to NRS 533.370(3) the state engineer should have denied the application on that basis.[3] We see no threat to the public interest, however, in the grant of a water right to Blue Lake for public recreation purposes to a public agency such as the BLM. The BLM manages the land surrounding the lake for recreation and seeks a non-consumptive water right that will not reduce the amount of water presently available for other uses. Livestock and wildlife retain access to the water of Blue Lake under the district court's order.

For the reasons given above, we hold that Nevada water law recognizes and permits water appropriation *in situ,* without a diversion, for public recreation purposes. The district court properly upheld the engineer's approval of the Blue Lake permit, and its decision upholding the Blue Lake permit is affirmed.

### THE STOCK AND WILDLIFE WATERING PERMIT APPLICATIONS

The district court relied on this court's holding in Prosole v. Steamboat Canal Co., 37 Nev. 154, 140 P. 720 (1914), as authority for reversing the state engineer's grant of permits to the BLM and United States Forest Service to develop new water sources for stock and wildlife watering. In *Prosole,* this court held that the person who "applies the water to the soil, for a beneficial purpose," is the actual appropriator and the owner of

---

[2]NRS 533.030(2) provides: "The use of water, from any stream system as provided in this chapter and from underground water as provided in NRS 534.080, for any recreational purpose, is hereby declared to be a beneficial use."

[3]NRS 533.370(3) provides, in pertinent part, that where a proposed appropriation "threatens to prove detrimental to the public interest, the state engineer shall reject the application and refuse to issue the permit asked for."

the water right, even if someone else, such as a canal company, diverts the water from its natural course. *Id.* at 162, 140 P. at 723.

The BLM and Forest Service intend to provide the water requested in the applications to the livestock of grazing permit holders on federal range lands. Wildlife would also have access to the water. The district court reasoned that since the federal agencies owned no livestock, the United States could not put the water to beneficial use. Rather, the court stated, owners of livestock actually put water appropriated for stockwatering to beneficial use. The district court concluded that therefore under *Prosole* the United States could not appropriate water for stockwatering. The district court applied the same reasoning to wildlife watering. The court noted that the United States does not own the wildlife which is to receive water, because no one "owns" animals in the wild.

We conclude that the district court applied *Prosole* in an excessively rigid fashion. The proposed new water sources are dedicated to providing water to livestock and wildlife. These are beneficial uses of water. Nevada law and longstanding custom recognize stockwatering as a beneficial use of water. *See* NRS 533.490(1); *Waters of Horse Springs,* 99 Nev. 776, 671 P.2d 1131; *Steptoe Live Stock Co.,* 53 Nev. 163, 295 P. 772.

Wildlife watering is encompassed in the NRS 533.030(2) definition of recreation as a beneficial use of water. Nevada law recognizes the recreational value of wildlife, NRS 501.100(2),[4] and the need to provide wildlife with water. *See* NRS 501.181(3)(c);[5] 533.367.[6] Sport hunting, a common use of wildlife, is a form of recreation. The legislative history of NRS 533.030(2) indicates that the legislature intended the provision to include wildlife watering under the rubric of recreation as a beneficial use of water. *See* Minutes, Comm. on Federal, State and Local Governments, 55th Legislative Sess. (March 7, 1969)

---

[4]NRS 501.100(2) provides: "The preservation, protection, management and restoration of wildlife within the state contribute immeasurably to the aesthetic, recreational and economic aspects of these natural resources."

[5]NRS 501.181(3)(c) specifies that establishing policies pertaining to the acquisition of water rights for the management, propagation, protection and restoration of wildlife is included among the duties of the Nevada Board of Wildlife Commissioners.

[6]NRS 533.367 provides in relevant part that "[b]efore a person may obtain a right to the use of water from a spring or water which has seeped to the surface of the ground, he must ensure that wildlife which customarily uses the water will have access to it."

("the bill . . . would include fishing and wild-life"). It follows that providing water to wildlife is a beneficial use of water.

In managing federal grazing lands, the United States acts in a proprietary capacity. *See* Ansolabehere v. Laborde, 73 Nev. 93, 97-99, 310 P.2d 842, 844-45, *cert. denied,* 355 U.S. 833 (1957). *See also* Kleppe v. New Mexico, 426 U.S. 529 (1976). The new water sources covered by the applications at issue will permit better use of areas of the public range where grazing is limited by the lack of watering places, a problem recognized by this court. *See Ansolabehere,* 73 Nev. at 104-05, 310 P.2d at 848. Congress has mandated development of water sources for livestock and wildlife as a component of the federal land management program. *See* 43 U.S.C. sections 1751(b) and 1901 to 1904. Thus, the United States acts in its proprietary capacity as a landowner when federal agencies seek to appropriate water under state law for livestock and wildlife watering. Although the United States does not own the livestock and wildlife, it owns the land on which the water is to be put to beneficial use. In addition, the United States benefits as a landowner from the development of new water sources on federal land.

The United States is recognized as a "person" for the purpose of water appropriation in Nevada. NRS 533.010.[7] The district court correctly stated that the United States "is to be treated as a person . . . it is not to be feared, given preferential treatment and certainly not discriminated against." Recently, the California Supreme Court held that the United States could not be denied the same riparian water rights for national forest lands that private riparian landowners enjoy under California water law. In re Water of Hallett Creek Stream Sys., 749 P.2d 324 (Cal. 1988), *cert. denied sub nom.* California v. United States, ...... U.S. ......, 109 S.Ct. 71 (October 2, 1988) (No. 87-2010). *Hallett Creek* supports the principle that the United States is entitled to equal treatment under state water law.

The Board of Agriculture argues that, in addition to the reasons given by the district court, the engineer erred in granting water rights for stock and wildlife watering to the United States because ownership of those water rights by the United States is against the public interest. The Board of Agriculture states that once the water is subject to federal control it will not be available for other uses at a later date. While this may be true, it is inherent in the

---

[7]NRS 533.010 provides: "As used in this chapter, 'person' includes the United States and this state."

prior appropriation system of water rights, and we cannot discriminate against the United States on that basis.

Under NRS 533.010, therefore, applications by United States agencies to appropriate water for application to beneficial uses pursuant to their land management functions must be treated on an equal basis with applications by private landowners. Although the United States owns no livestock and does not "own" wildlife, it owns land and may appropriate water for application to beneficial uses on its land. The district court erred in deciding that the United States could not obtain water rights for stockwatering and wildlife watering, and the portion of its order denying those applications is vacated.

For the reasons stated above, the district court's decision upholding the state engineer's grant of the Blue Lake application is affirmed. The district court's reversal of the stock and wildlife applications approved by the state engineer is vacated and the engineer's decisions are reinstated.[8]

---

[8]THE HONORABLE CLIFF YOUNG, Justice, voluntarily disqualified himself from consideration of this appeal.