**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**ORR WATER DITCH COMPANY, et al., Defendant,**

and

**State of Nevada; Sierra Pacific Power Company; Truckee–Carson Irrigation District; Pyramid Lake Paiute Tribe of Indians, Defendants–Appellees,**

and

**City of Reno; City of Sparks, Defendants–Appellants.**

No. 89–15179.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 20, 1990.

Decided Sept. 18, 1990.

As Amended Dec. 13, 1990.

Laura B. Ahearn, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., for defendants-appellants.

Dirk D. Snel, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

John W. Hoffman, Sp. Deputy Atty. Gen., Reno, Nev., Robert Pelcyger, Fredericks & Pelcyger, Boulder, Colo., for defendants-appellees.

Before LIVELY,* FLETCHER and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Central to this appeal is the question of who has jurisdiction in the first instance over proposed actions of the cities of Reno and Sparks ("Cities") to change sewage treatment methods, thereby diverting effluent from the Truckee River system to land irrigation. The Cities claim that sewage treatment does not involve "water," and that they therefore need not apply for a change in water right to the Nevada State Engineer when altering the sewage discharge point. Claiming the converse are the appellees, the United States, the state of Nevada, Sierra Pacific Power Company (SPPC), the Truckee–Carson Irrigation District, and the Pyramid Lake Paiute Tribe of Indians. The Cities filed a "motion" in the district court seeking a declaratory judgment and injunctive relief on their claims. The district court dismissed the action without prejudice, holding that the Cities first had to exhaust the available administrative proceedings with the State Engineer. We affirm.

## FACTS

### The Orr Ditch Litigation

The Reclamation Act of 1902, 32 Stat. 388, authorized the federal government to pursue efforts to reclaim arid lands in certain western states. In one of these efforts, the Newlands Reclamation Project, the government planned to irrigate an area of western Nevada with water from the Truckee and Carson Rivers, which flow through and around Lake Tahoe and Reno, Nevada.[1] Because private landowners and the Indians of the Pyramid Lake Indian Reservation had already-established water rights, the United States filed an action in 1913 to quiet title to all water rights in the Project area. The resulting legal activity became known as the *Orr Ditch* litigation.

An appointed Special Master held hearings, then issued a report and recommended a proposed decree in 1924. Two years later, the district court issued a temporary restraining order enforcing the proposed decree. In 1934, after a lapse of interest in the litigation, a drought prompted more activity. In 1935, the major parties to the litigation signed an agreement similar to the proposed decree that had been in effect on a "temporary" basis. Finally, in 1944, the district court entered its final decree that approved and incorporated the settlement.[2] In *Nevada v. United States*, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), the Supreme Court held that the decree is res judicata as to all parties represented in the litigation and their privy;[3] accordingly such parties cannot seek additional rights to the Truckee's waters.

### Reno–Sparks Sewage Treatment

The Cities and their predecessors have been handling sewage since the mid-nineteenth century. At first, they discharged raw sewage into the river system. Reno first began treating sewage upon opening a sewage treatment facility in 1930. Since then, both Cities gradually have modernized their sewage treatment. They have always discharged the fully treated sewage into the Truckee River system, although the discharge locations have changed. The Cities claim that they have never applied to the State Engineer for water rights to change their treatment methods or discharge locations.

The Cities currently operate a joint treatment facility, the Reno–Sparks Wastewater Treatment Facility (RSWTF), which dis-

---

* The Honorable Pierce Lively, Senior Circuit Judge of the Sixth Circuit, sitting by designation.

1. A simple map of the area appears at *United States v. Alpine Land & Reservoir Co.,* 431 F.2d 763, 765 (9th Cir.1970).

2. This statement of the litigation's history relies on the account in *Nevada v. United States,* 463

U.S. 110, 115–18, 103 S.Ct. 2906, 2910–12, 77 L.Ed.2d 509 (1983).

3. The Court *inter alia* held that even though the United States represented adverse or potentially adverse interests, those interests are bound by the decree and cannot relitigate their respective shares within the total allocation to the government-represented parties.

charges into Steamboat Creek. RSWTF has expanded steadily since its start-up in 1967. It currently can treat 30 million gallons per day (MGD) and soon will be able to treat 40 MGD. The Cities are planning an expansion project to meet an anticipated need to treat 60 MGD in the future.

In 1987, the Cities developed a plan to utilize "land application" as a sewage treatment method. Land irrigated with highly, but not fully, treated sewage effluent further clears the effluent of impurities. As part of the plan, the Cities would divert partially treated effluent to irrigate land owned by the University of Nevada at Reno and a sludge disposal site owned by the City of Reno. These sites had previously used water diverted from Pioneer Ditch (part of the Truckee system) to irrigate, under *Orr Ditch*-decreed water rights. The Cities actually irrigated with the effluent during July, August, and September 1987.

*State Engineer Proceedings*

On March 18, 1987, Reno and the University filed applications with the State Engineer[4] to change their Pioneer Ditch diversion right to Steamboat Creek. The theory for the application to the State Engineer apparently was that because the parcels would now be irrigated with the effluent that RSWTF once discharged into Steamboat Creek, the right to divert the Pioneer Ditch water with which the owners had previously irrigated needed to be transferred downstream to Steamboat Creek. Without this change, the parcel owners would have both the Pioneer Ditch water and the effluent with which to irrigate, leaving downstream water-rights holders without the water they previously received from the RSWTF discharge.

The Pyramid Lake Paiute Tribe of Indians and the Truckee–Carson Irrigation District, which operates the Newlands Reclamation Project by contract with the federal government, protested the applications. The Engineer set a hearing date for January 27, 1988, then reset the date for March 2. The March 2 hearing was vacated at Reno's request and a prehearing confer-

ence set for April 26. On March 16, the Tribe filed an application for a cease and desist order, claiming that the Cities already were diverting effluent to irrigation, without waiting for the Engineer's approval. Reno responded on April 6 with an answer to the cease and desist application and a Petition for Declaratory Order. The petition challenged the Engineer's jurisdiction and the requirement that Reno apply to the Engineer for a change in point of diversion in order to employ land application methods of purification. The April 26 conference was held as scheduled.

On May 5, the Engineer denied the application for the cease and desist order, finding that the Tribe had not shown that the Cities currently were implementing their land application plan. The Engineer also denied the petition for declaratory order because the issues were "of extremely significant importance." He continued,

> It is within the State Engineer's authority to decide such matters only after due consideration from a complete record which includes the presentation of all the facts, evidence and testimony pertaining thereto from all involved parties. It is the opinion of the State Engineer that the forum leading to the full understanding of the instant matter is most properly accomplished at administrative hearings with all parties given ample opportunity to present their respective positions, evidence and testimony. . . .
>
> The matters contained in City's Petition are included among the matters which [sic] the State Engineer requires further explanation, information and evidence, and which cannot be properly determined on the state of the record now before him. The proper forum to gather such additional information is the public administrative hearing.

Order re: Petition for Declaratory Order Filed by City of Reno; and Application for Cease and Desist Order Filed by Pyramid Lake Paiute Tribe of Indians at 2–3 (Nv. State Eng'r May 5, 1988).

---

**4.** Reno and the University assert that they did so    upon the insistence of the State Engineer.

Reno and the University withdrew their applications to change diversion points on May 13 and May 16, respectively, with Reno indicating that land application would begin by the end of the month. After a field investigation revealed that the land application was indeed occurring, the Engineer issued a temporary cease and desist order against Reno, the University, and Sparks (which had not been a party to the Engineer's proceedings), on July 5. The Engineer treated the change application withdrawals as "request[s] to withdraw," Order at 2 (Nv. State Eng'r July 5, 1988), and set a hearing date for August 10. He eventually continued the hearing until further notice pending disposition of the action in federal court.

*District Court Action*

On May 9, the Cities filed a "Motion for Declaratory and Injunctive Relief" in the United States District Court for the District of Nevada, which has continuing jurisdiction of the *Orr Ditch* decree. *See United States v. Alpine Land & Reservoir Co.,* 887 F.2d 207, 209 (9th Cir.1989). The Cities requested that the court:

1. Determine and declare that the routing of partially-treated sewage effluent from within RSWTF for further treatment by land application, is not and will not be an illegal or unauthorized diversion of water from the Truckee River, and is not and will not be deemed disobedience or disregard of the [*Orr Ditch* decree].

2. Determine and declare that land application is an accepted and recognized method of treating municipal and industrial sewage and wastewater.

3. Determine and declare that the Cities are not required to apply to and receive the approval of the office of the State Engineer as a prerequisite to treating sewage by land application methods.

4. Determine and declare that the State Engineer lacks the legal and statutory authority to issue a cease and desist order against the Cities.

5. Determine and declare that any previously announced position, decision or ruling by the Office of the State Engineer concerning the issues presented by this Motion constitutes *ad hoc* rulemaking, not in accordance with law or with the requisites of due process, and cannot be properly applied to or enforced against the Cities.

6. Preliminary [sic] and permanently enjoin the State Engineer from issuing or seeking to enforce any cease and desist order against the Cities, and preliminarily and permanently enjoin the State Engineer and all parties herein from taking any other action, to stop, preclude, interfere with or purport to regulate the routing of sewage effluent from within RSWTF for further treatment by land application.

Motion for Declaratory and Injunctive Relief, Equity No. A–3, at 10–11 (D.Nev. May 19, 1988).

The five appellees responded to the Cities' motion. Among other things, they pled as an affirmative defense that the Cities had not exhausted their administrative remedies. After hearing from the parties at a pretrial conference, the court held that the *Orr Ditch* decree requires that parties seeking to change water diversion points or uses first apply to the State Engineer and exhaust those proceedings before seeking review in the *Orr Ditch* court. The court denied preliminary injunctive relief and dismissed the action "without prejudice to a review in this court of final proceedings of the State Engineer." Order, Equity No. A–3–4 RDF, at 5 (D.Nev. Jan. 3, 1989) [hereinafter Jan. 3, 1989 Order]. The Cities appealed.

## JURISDICTION

Although most of the issues raised by the Cities are state law questions, the district court had jurisdiction to determine the proper forum for decision of disputes regarding *Orr Ditch* decreed water rights under its continuing jurisdiction of the *Orr Ditch* decree. We have jurisdiction of this appeal under 28 U.S.C. § 1292(a)(1). *Joint Bd. of Control v. United States,* 862 F.2d 195 (9th Cir.1988) (appeal of denial of preliminary injunction and dismissal of com-

plaint without prejudice for failure to exhaust administrative remedies).

## STANDARD OF REVIEW

■■■ We review under an abuse of discretion standard the district court's dismissal without prejudice for failure to exhaust administrative remedies. *See Southeast Alaska Conservation Council, Inc. v. Watson,* 697 F.2d 1305, 1309 (9th Cir.1983) (district court's decision not to apply exhaustion doctrine when exhaustion not mandated by statute reviewed for abuse of discretion). We will reverse the denial of a preliminary injunction only if the district court abused its discretion in denying the injunction, or based its decision on an incorrect conclusion of law (reviewed *de novo*) or on erroneous fact-findings (reviewed for clear error). *Religious Technology Center v. Scott,* 869 F.2d 1306, 1309 (9th Cir.1989). We review the interpretation of the decree *de novo. Pekarsky v. Ariyoshi,* 695 F.2d 352, 354 (9th Cir.1982) ("[t]he interpretation of a settlement agreement, like that of a contract, is a question of law subject to de novo review").

## DISCUSSION

### I. *THE* ORR DITCH *DECREE*

■■■ The decree quiets title to the rights to use water from the Truckee River system.[5] It enjoins all parties and their successors from "asserting or claiming" any rights not determined by the decree and from "in any manner prevent[ing] or interfer[ing] with the diversion, use and enjoyment of the waters of any of the other persons or parties as allowed or adjudicated by this decree." Finally, under the decree,

[p]ersons whose rights are adjudicated hereby, their successors or assigns, shall be entitled to change, *in the manner provided by law* the point of diversion and the place, means, manner or purpose of use of the waters to which they are so entitled or of any part thereof, so far as they may do so without injury to the rights of other persons whose rights are fixed by this decree.

(Emphasis added.) The appellees focus their efforts on the underlined language, asserting that "the manner provided by law" means the procedures established by Nevada law.

### A. *The Decree*

In adjudicating water rights, courts must look to state law. *See California v. United States,* 438 U.S. 645, 653, 98 S.Ct. 2985, 2989–90, 57 L.Ed.2d 1018 (1978) ("The history of the relationship between the Federal Government and the States in the reclamation of the arid lands is both long and involved, but through it runs the consistent thread of purposeful and continued deference to state water law by Congress."); *United States v. Alpine Land & Reservoir Co.,* 697 F.2d 851, 858 (9th Cir.1983) ("state law will control the distribution of water rights to the extent that there is no preempting federal directive"). The Cities accept that state law controls substantive water rights issues but claim that the *Orr Ditch* court should be the forum for their challenge to the applicability of Nevada water law procedures in this case.

■■■ According to the decree, however, *Orr Ditch* water right claims should be handled in the *manner* provided by law. Not only state water law substance, therefore, but procedure as well, governs *Orr*

---

5. The decree, according to its own words,

> ordered, adjudged and decreed ... [t]hat the parties, persons, corporations, intervenors, grantees, successors in interest and assigns and substituted parties above and hereinafter named and their successors in interest and assigns are, and each of them is, as against every other one, hereby adjudged to be the owners of the water rights hereinafter specified and set forth and entitled and allowed to divert and use, from the Truckee River and its tributaries and from the streams, springs,

> drain and waste waters hereinafter mentioned, and by and through their respective ditches, canals, flumes, dams and reservoirs, for the irrigation of their respective hereinafter described lands, for generating electricity and power, for municipal purposes, for supplying the people living in cities and towns, for reclamation of arid lands, for watering livestock, for domestic uses and other beneficial purposes, water in the respective amounts and subject and according to the respective dates of appropriation and priorities as hereinafter stated, found and allowed.

*Ditch* water rights. As we explain below, the case law supports this interpretation.

### B. *The* Orr Ditch *District Court's Interpretation*

■ The history of the *Orr Ditch* court's approach to *Orr Ditch*-decreed water rights strongly supports the district court's decision that the claims first be presented to the Engineer. In 1940, before the district court entered the final decree, the district court was asked to rule on the application of private landowners to change the points of diversion and use of Truckee River water rights allegedly owned by the applicants. Memorandum Decision and Order, Equity No. A3 (D.Nev. June 26, 1940). The court denied the application without prejudice to its renewal upon a showing that the applicants had applied to and received a decision from the State Engineer.

In another recent case involving the decree, the *Orr Ditch* court granted summary judgment requiring the United States to apply to the State Engineer for a change in place and purpose of water use. *United States v. Orr Ditch Water Co.,* Equity No. A–3–2–WEC (D.Nev. March 8, 1984). The district court noted that since 1940, "all change applications under the *Orr Ditch* decree have been initiated with the Nevada State Engineer. The State Engineer has acted 284 times and no appeal has ever been taken to the Federal District Court." *Id.* at 3. The court acknowledged the State Engineer's expertise and experience in handling water rights claims under *Orr Ditch,* the professional nature of his office and staff, and his responsibility to follow Nevada law, including its requirement that he safeguard all interests. The district court also noted that the Engineer reports all applications for change to the Water Master (who administers the decree). The court found that "[t]he orderly administration of water rights in the State of Nevada mandates that all changes of water rights be processed through the State Engineer's office, as has been the consistent procedure

in the past." *Id.* at 4. The court also concluded that "in the manner provided by law" means "in accordance with Nevada state procedures for allowing changes." *Id.* at 4–5. The court retained jurisdiction to hear an appeal from the State Engineer's decision and to review the decision to the extent it considered proper.

### C. *Analogy to Appellate Rulings in* Alpine Land

The *Alpine Land* litigation on Carson River water rights parallels the *Orr Ditch* litigation. Begun in 1925, and long governed by a 1950 temporary decree, the litigation reached its endpoint when the Nevada district court entered the final decree in 1980. *United States v. Alpine Land & Reservoir Co.,* 503 F.Supp. 877 (D.Nev. 1980), *aff'd as modified,* 697 F.2d 851 (9th Cir.1983) (*Alpine I*).

The Carson River decree is more specific than the *Orr Ditch* decree about who handles change applications.

> Applications for changes in the place of diversion, place of use or manner of use as to Nevada shall be directed to the State Engineer. Any person feeling himself aggrieved by any order or decision of the State Engineer on these matters may appeal that decision or order to this Court.

(Quoted in Jan. 3, 1989 Order at 2). The district court's opinion dismissing the Cities' action states that, although the Carson River decree is more specific, the *Orr Ditch* language "in the manner provided by law" has the same meaning.

When our circuit addressed the Carson River provision, in the appeal of the final judgment in the *Alpine Land* litigation, we held that change applicants should utilize Nevada procedures. *Alpine I,* 697 F.2d at 857–58; *see also Alpine II,* 878 F.2d at 1223 ("The *Alpine* decision necessarily contemplated that state law would control both the process and the substance of a proposed transfer of water rights."). We

agreed that "the notice and protest procedures of Nevada law are adequate to allow exploration of [federal water rights issues], when they arise, before the state engineer." *Id.* at 858. We also recognized that the decree permits appeal of the Engineer's decisions to the federal district court. *Id.*

Subsequent action under the aegis of the decree acknowledges the requirement of applying Nevada law. The Nevada State Engineer approved applications for water rights transfers on the Newlands Project after our decision in *Alpine I.* The Tribe challenged the Engineer's approval, and the district court rejected the approval of some of the transfers on the basis that Nevada law did not apply to them. The United States appealed; we reversed, stressing that Nevada law governs. *Alpine II,* 878 F.2d at 1217.

The case law echoes the custom and practice of applying for water rights changes to the Engineer under both the *Orr Ditch* and the Carson River decrees; the accepted procedure has been that applications must first be made to the Nevada State Engineer's office before the parties can seek review of the Engineer's decisions in the federal district court. The plain language of the decrees, the dominance of state law issues, and the Engineer's expertise underlie this practice. The Cities claim, however, that their sewage treatment alteration does not involve a water right at all. If they are right, they need not apply for a water right change and the Engineer cannot subject them to his jurisdiction. If they are wrong, they must ap-

ply to the Engineer for a water right change. The question for us is whether the Engineer or the *Orr Ditch* federal court is the proper forum to decide the jurisdictional challenge.[6]

## II. *NEVADA WATER LAW*

Nevada first passed its comprehensive water law statute in 1913 (the same year the United States initiated the *Orr Ditch* litigation). Chapter 533 of the Nevada Code governs the adjudication of vested water rights and the appropriation of public waters. The statute's purpose is to regulate appropriation of water from all water sources in the state. "The water of all sources of water supply within the boundaries of the state whether above or beneath the surface of the ground, belongs to the public." Nev.Rev.Stat. § 533.025. Furthermore, "[s]ubject to existing rights, and except as otherwise provided in this section, all water may be appropriated for beneficial use as provided in this chapter and not otherwise." *Id.* § 533.030(1).

The State Engineer[7] plays a major role in Nevada's statutory water scheme. He determines every matter relating to water rights, either by request or on his own initiative. Anyone "desiring to appropriate any of the public waters, or to change the place of diversion, manner of use or place of use of water already appropriated, shall, before performing any work in connection with such appropriation, make an application to the state engineer for a permit to make the same." *Id.* § 533.325.[8] Under Nevada law, a party must exhaust these

---

6. The parties expend a great deal of energy in their briefs arguing state law issues and vigorously disputing facts. Because the Engineer has done little and the district court has done no factfinding in this case, we have no factual record on which to base any legal judgment about the state law issues. Without such a record, we could not decide those fact-reliant questions even if the jurisdictional barrier did not prevent us from doing so.

7. The Engineer currently is Peter G. Morros.

8. The Engineer has the statutory power to prevent unlawful diversions, even to make arrests.

*Id.* §§ 533.470, 533.475; *see also State v. Sixth Judicial Dist.,* 53 Nev. 343, 1 P.2d 105 (1931) (the Engineer's powers include everything lawful and necessary to the effective execution of his statutory authority). Any person "aggrieved" by the Engineer's decision can appeal; "on stream systems where a decree of court has been entered, the action shall be initiated in the court that entered the decree." Nev.Rev.Stat. § 533.450(1). Nevada law thus supports the system adopted by the federal courts for appeals of Engineer decisions on federal-court-decreed water rights.

administrative procedures before seeking judicial relief. *First Am. Title Co. v. State*, 91 Nev. 804, 543 P.2d 1344, 1345 (1975). Exceptions are made, however, "[w]here one has not enjoyed a fair opportunity to exhaust the administrative process, or where resort to administrative procedures would be futile." *Engelmann v. Westergard*, 98 Nev. 348, 647 P.2d 385, 388–89 (1982). In addition, one need not "initiate and participate in proceedings where an administrative agency clearly lacks jurisdiction, or which are vain and futile." *Id.* at 389. The Cities argue that the Engineer has no jurisdiction of the sewage-related issues because, sewage not being water, no water rights are involved.

■ The Engineer does not clearly lack jurisdiction because the Cities are not clearly correct in claiming that their innovative treatment of sewage does not involve "water" and thus no water right. Nevada law indicates that at least at some point sewage is "water": "Effluent discharged from the point of the final treatment from within a sewage collection and treatment system shall be considered water." Nev.Rev.Stat. § 533.440(3). Although the Cities have argued to the Engineer that the effluent used in the land application has not been discharged from the point of final treatment, the Engineer has stated preliminarily that the Cities "appear to be in violation of ... [section] 533.440(3)." Jan. 3, 1989 Order at 2. Furthermore, "beneficial use" is the basis, measure, and limit of water rights in Nevada, *State v. Morros*, 766 P.2d 263, 266 (Nev.1988); Nev.Rev.Stat. § 533.035, and

irrigation is a beneficial use. Reno's and the University's own applications to the Engineer indicated that a water right may be at issue by stating that the purpose of the sewage treatment project was "to provide highly treated sewage effluent for irrigation."

Because the Engineer does not clearly lack jurisdiction in this case, the Cities still must exhaust the administrative procedures if the Engineer himself has authority to decide the jurisdictional question.[9] The Nevada Supreme Court has held that Nevada administrative entities have the authority to decide disputes regarding their own jurisdiction. In *Public Serv. Comm'n v. Eighth Judicial Dist. Court*, 61 Nev. 245, 123 P.2d 237 (1942), the Nevada Public Service Commission had ordered a passenger bus line operator to show cause why the Commission should not issue a cease and desist order against him for operating in intrastate commerce without securing the necessary state approval. The bus operator filed suit in state court seeking an injunction against the scheduled hearing and any other Commission enforcement action because the Commission had no authority to issue or enforce its order. After the court granted a preliminary injunction against the Commission, the Commission sought a writ of prohibition from the Nevada Supreme Court. The Supreme Court held that the lower court did not have jurisdiction to interfere with "the discretion of an administrative body's exercise of legislative powers" absent "fraud or gross abuse." *Id.* 123 P.2d at 239. Given that the operator's case in the lower court was a

---

**9.** The Cities also argue that the futility exception to the exhaustion requirement should apply because the Engineer has already indicated his position on their claims. The Engineer expressed his preliminary position when taking required action on the Cities' change applications to him. He has not taken a final position on any matter and has scheduled further proceedings, postponed during the course of the federal judicial proceedings, to allow the parties to present evidence on the Cities' claims so that he may give them due consideration upon a fully developed record.

The Cities also argue that letting the Engineer decide their claims would be futile because he is powerless to grant the relief they seek, because there is no fair and adequate procedure by

which he decides claims, and because the Engineer is biased against them as an entity of the state of Nevada, which opposes them in this dispute. The Engineer does have power to grant appropriate relief. He can decline to exercise jurisdiction because there is no water right at issue; he can also grant the Cities' applications to transfer the water rights. Our circuit has held that the Engineer's procedures are adequate to deal with water right change applications under the federal water decrees. *Alpine I,* 697 F.2d at 858. There is also no support in the record for the Cities' claim that the Engineer is biased. We cannot assume bias simply because a governmental entity must decide a dispute involving another governmental entity from the same sovereign as a party.

challenge to the administrative agency's jurisdiction, the Supreme Court's holding that the district court did not have jurisdiction to consider the operator's claim required the agency to determine its own jurisdiction.

The Nevada Supreme Court more recently has emphasized when addressing the State Engineer's authority that " '[a]n agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action....' " *Morros*, 766 P.2d at 266 (quoting *Clark County School Dist. v. Local Gov't*, 90 Nev. 442, 446, 530 P.2d 114, 117 (1974)). Thus, under *Public Service Commission* and *Morros*, the Engineer has the power in the first instance to decide challenges to his own jurisdiction.

CONCLUSION

The *Orr Ditch* decree requires applications to change the use or diversion point of decree-governed rights to be decided in accordance with Nevada law. Under Nevada law, the State Engineer has primary jurisdiction of water appropriation claims. Parties contesting water rights issues must exhaust proceedings with the State Engineer before seeking judicial relief. There is no exception to the exhaustion requirement when a party challenges the Engineer's jurisdiction, unless the Engineer clearly lacks jurisdiction, for the Engineer in the first instance may determine his own jurisdiction. We affirm the district court's judgment dismissing the Cities' action without prejudice, requiring them to pursue their water rights claims with the State Engineer before presenting them to the *Orr Ditch* court.

AFFIRMED.