OPINION
 

 Per Curiam:
 

 Peggy Bowen (“Bowen”) is a schoolteacher employed by the Washoe County School District (“School District”). The School District utilizes a standard contract requiring 183 days of service in return for a salary annualized over twelve months. Bowen teaches during the traditional school year from September through May, with recesses during the three summer months.
 

 FACTS
 

 In April of 1995, Bowen underwent surgery in connection with a compensable work-related injury. She was temporarily disabled thereafter, until released for return to her teaching duties in late August of 1995. Throughout the entire period of her disability,
 
 *880
 
 including the months when school was not in session, the School District paid Bowen her full monthly wage.
 

 During the months school was in session, Bowen also received Temporary Total Disability (“TTD”) payments, which she tendered back to the School District. This enabled her to receive credit against any sick leave used as a result of her injury. However, when the regular nine-month school year concluded, the School District terminated Bowen’s TTD benefits. The School District justified this position on the grounds that Bowen suffered no wage losses during the summer because (1) she continued to receive her pay and (2) her sick leave accumulations were unaffected during the recess.
 

 Bowen also held positions with the Nevada State Board of Education (“Board of Education”) and the Nevada State Indian Commission (“Indian Commission”). Although she worked at these positions throughout the entire year of 1995, Bowen opted not to collect the additional income from these endeavors between April and October because of her concern that the School District would refuse payment of her TTD benefits. In subsequent legal proceedings, the School District asserted that her voluntary choice to forego the income did not compel a finding of statutory disablement.
 

 Bowen challenged the School District’s denial of TTD benefits during the summer months. The Department of Administration hearing officer affirmed the School District’s termination of TTD benefits, concluding that Bowen’s continued receipt of regular paychecks mandated a finding that there was no wage loss for the purpose of NRS 616.585, the Nevada TTD statute.
 
 [1]
 

 Thereafter, an appeals officer reversed the hearing officer’s decision and ordered the School District to pay TTD benefits through the summer recess, ending August 21, 1995.
 

 The district court denied the School District’s petition for judicial review because Bowen’s temporary disability precluded her from obtaining summer employment. The district court reasoned that, although Bowen received her salary in twelve monthly installments, her salary was actually earned during the 183-day school year; thus, because she had pursued independent employment during prior summer recesses, her temporary disability did not cease for compensation purposes during the 1995 summer recess.
 

 DISCUSSION
 

 The sole issue on appeal is whether an injured classroom instructor who is unable to engage in seasonal work during a sum
 
 *881
 
 mer recess, is entitled to receive temporary total disability benefits during the recess under NRS 616C.475, 616A.340, and 616C.400.
 
 [2]
 

 
 *882
 
 Because this matter requires an interpretation of the statutory scheme for payment of disability benefits, we choose to undertake an independent review and address this matter anew. State v. State Engineer, 104 Nev. 709, 766 P.2d 263 (1988).
 

 The School District concedes that Nevada’s statutory scheme does not specifically define temporary total disability in one specific statute. However, it does contend that NRS 616A.340, 616C.400, and 616C.475, when read together, define the complete concept of “total disability” under our workers’ compensation laws. The School District further contends that Bowen was not entitled to. TTD benefits during the 1995 summer recess because she continued to receive a full monthly wage, thus suffering no wage loss, a prerequisite to the right to receive TTD benefits. Bowen argues in response that the income received from the School District during the summer months was actually pre-earned during the nine-month traditional instruction period. Bowen further argues that, because her disability prevented her from earning income from other sources during the summer months of 1995, she was entitled to TTD benefits. We agree.
 

 The Nevada TTD statutory scheme does not expressly prohibit receipt of TTD benefits during periods of inactivity where an employee is compensated on an annualized basis for a fixed period of employment less than one year. Here, the employee pre-earned the installment salary payments made during the summer recess and was incapacitated from accepting seasonal employment as a result of a work-related injury. While the School District correctly notes that no regular salary was lost due to the industrial disability, and while the stated purpose of the TTD payments was to alleviate the loss of sick leave due to work-related injuries, Bowen was rendered unable to pursue summer employment within
 
 *883
 
 the meaning of NRS 616A.340
 
 [3]
 
 (“ ‘[t]otal disability’ . . . [includes] . . . incapacity . . . which prevents the covered workman from engaging ... in any occupation”). Thus, an additional statutorily intended purpose exists for the TTD benefits. We, therefore, conclude that Bowen was not prohibited from seeking TTD payments during the 1995 summer recess.
 

 Accordingly, we hereby affirm the lower court’s decision denying judicial review.
 
 [4]
 

 [1]
 

 NRS 616.585 is now NRS 616C.475 and discusses temporary total disability compensation.
 

 [2]
 

 Previously NRS 616.585, 616.117, and 616.570.
 

 NRS 616C.475 states:
 

 Amount and duration of compensation; limitations.
 

 - 1. Except as otherwise provided in this section, NRS 616C. 175 and 616C.390, every employee in the employ of an employer, within the provisions of chapters 616A to 616D, inclusive, of NRS, who is injured by accident arising out of and in the course of employment, or his dependents, is entitled to receive for the period of temporary total disability, 66 % percent of the average monthly wage.
 

 2. Except as otherwise provided in NRS 616B.185 and 616B.186, an injured employee or his dependents are not entitled to accrue or be paid any benefits for a temporary total disability during the time the injured employee is incarcerated. The injured employee or his dependents are entitled to receive such benefits when the injured employee is released from incarceration if he is certified as temporarily totally disabled by a physician or chiropractor.
 

 3. If a claim for the period of temporary total disability is allowed, the first payment pursuant to this section must be issued by the insurer within 14 working days after receipt of the initial certification of disability and regularly thereafter.
 

 4. Any increase in compensation and benefits effected by the amendment of subsection 1 is not retroactive.
 

 5. Payments for temporary total disability must cease when:
 

 (a) A physician or chiropractor determines that the employee is physically capable of any gainful employment for which the employee is suited, after giving consideration to the employee’s education, training and experience;
 

 (b) The employer offers the employee light-duty employment or employment that is modified according to the limitations or restrictions imposed by a physician or chiropractor pursuant to subsection 7; or
 

 (c) Except as otherwise provided in NRS 616B. 185 and 616B.186, the employee is incarcerated.
 

 6. Each insurer may, with each check that it issues to an injured employee for a temporary total disability, include a form approved by the division for the injured employee to request continued compensation for the temporary total disability.
 

 7. A certification of disability issued by a physician or chiropractor must:
 

 (a) Include the period of disability and a description of any physical limitations or restrictions imposed upon the work of the employee;
 

 (b) Specify whether the limitations or restrictions are permanent or temporary; and
 

 (c) Be signed by the treating physician or chiropractor authorized pursuant to NRS 616B.515 or 616B.527.
 

 8. If certification of disability specifies that the physical limitations or restrictions are temporary, the employer of the employee at the time of his accident is not required to comply with NRS 616C.545 to 616C.575, inclusive, and 616C.590 or the regulations adopted by the division governing vocational rehabilitation services if the employer offers the employee a position that is substantially similar to the employee’s position at the time of his injury in relation to the location of the employment, the hours he is required to work and the salary he will be paid.
 

 NRS 616A.340 states in part:
 

 “Total disability” means incapacity resulting from an accident arising
 
 *882
 
 out of and in the course of employment which prevents the covered workman from engaging, for remuneration or profit, in any occupation for which he is or becomes reasonably fitted by education, training or experience.
 

 NRS 616C.400 states in part:
 

 Minimum duration of incapacity.
 

 1. Temporary compensation benefits must not be paid under chapters 616A to 616D, inclusive, of NRS for an injury which does not incapacitate the employee for at least 5 consecutive days, or 5 cumulative days within a 20-day period, from earning full wages, but if the incapacity extends for 5 or more consecutive days, or 5 cumulative days within a 20-day period, compensation must then be computed from the date of the injury.
 

 2. The period prescribed in this section does not apply to accident benefits, whether they are furnished pursuant to NRS 616C.255 or 616C.265, if the injured employee is otherwise covered by the provisions of chapters 616A to 616D, inclusive, of NRS and entitled to those benefits.
 

 [3]
 

 The renunciations of salary for her additional positions with the school board and the Indian Commission were irrelevant to her eligibility for TTD benefits. We agree that the simple refusal to accept the additional salary did not facilitate Bowen’s claim of disability. Thus, it was unnecessary for her to refuse this separate compensation.
 

 [4]
 

 The Honorable Charles Springer, Chief Justice, did not participate in the decision of this appeal.