**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff,*

        and

PYRAMID LAKE PAIUTE TRIBE OF
INDIANS,
              *Petitioner-Appellant,*

        v.

ORR WATER DITCH CO.,
                  *Defendant,*

NEVADA STATE ENGINEER,
           *Respondent-Appellee,*

        and

GRAND SLAM ENTERPRISES, LLC;
TRI WATER AND SEWER COMPANY,
 *Real-parties-in-interest-Appellees.*

No. 07-17001

D.C. No.
CV-73-00018-LDG

OPINION

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, District Judge, Presiding

Argued and Submitted
July 15, 2009—San Francisco, California

Filed April 7, 2010

Before: Cynthia Holcomb Hall, William A. Fletcher and
Richard A. Paez, Circuit Judges.

Opinion by Judge William A. Fletcher

5261

**COUNSEL**

Don Springmeyer, ANGIUS & TERRY, Las Vegas, Nevada, Stephanie Zehren-Thomas, HESTER & ZEHREN, Louisville, Colorado, for the petitioner-appellant.

Michael Louis Wolz, OFFICE OF THE NEVADA ATTOR-NEY GENERAL, Reno, Nevada,Ross E. de Lipkau, PARSONS BEHLE & LATIMER, Reno, Nevada, for the respondents-appellees.

---

## OPINION

W. FLETCHER, Circuit Judge:

This case concerns the extent of the federal courts' subject matter jurisdiction over the administration of water rights adjudicated in the Orr Ditch Decree ("the Decree"). The Decree allocates rights to water in the Truckee River. *See United States v. Orr Water Ditch Co.*, Equity No. A3 (D. Nev. 1944). The river begins at Lake Tahoe and runs most of its course in Nevada, ultimately flowing into Pyramid Lake, northeast of Reno. The Pyramid Lake Paiute Tribe of Indians ("the Tribe") alleges that Nevada State Engineer Ruling 5747, allocating groundwater in the Tracy Segment Hydrographic Basin ("the Basin"), adversely affects its water rights under the Decree. The Tribe appealed the decision by the Nevada State Engineer ("State Engineer" or "Engineer") to the federal district court for the District of Nevada. Appellees contended that, whatever the effect of the Engineer's allocations of groundwater on the Tribe's decreed water rights, the district court did not have jurisdiction over the appeal because the Decree adjudicated only rights to surface water in the river. The district court agreed and dismissed the appeal for lack of subject matter jurisdiction.

We reverse and remand. If the Tribe's allegations are true, the groundwater taken from the Basin pursuant to the Engineer's groundwater allocations will adversely affect the Tribe's decreed water rights. We hold, first, that the Orr Ditch Decree forbids groundwater allocations that adversely affect the Tribe's decreed rights to water flows in the river. We

hold, second, that the federal district court has jurisdiction over an appeal from groundwater allocations by the Engineer that are alleged to have such an adverse effect.[1]

## I.   Background

The Truckee River is the principal source of water for Pyramid Lake. The lake is "widely considered the most beautiful desert lake in North America." *Nevada v. United States*, 463 U.S. 110, 114 (1983) (quoting S. Wheeler, *The Desert Lake* 90 (1967)). "When first viewed by Captain John Fremont in early 1844, Pyramid Lake was some 50 miles long and 12 miles wide. Since that time the surface area of the Lake has been diminished by about 20,000 acres." *Id.* at 115. The lake is situated entirely within the boundaries of the Pyramid Lake Paiute Tribe Reservation.

The history of the Orr Ditch Decree goes back over one hundred years. The Supreme Court recounted some of that history in *Nevada v. United States*. *Id.* at 113-18. We recounted it briefly in *United States v. Orr Water Ditch Co. (Orr Ditch I)*, 914 F.2d 1302, 1304 (9th Cir. 1990):

> The Reclamation Act of 1902 . . . authorized the federal government to pursue efforts to reclaim arid lands in certain western states. In one of these efforts, the Newlands Reclamation Project, the government planned to irrigate an area of western Nevada with water from the Truckee and Carson Rivers, which flow through and around Lake Tahoe and Reno, Nevada. Because private landowners and the Indians of the Pyramid Lake Indian Reservation had already-established water rights, the United States filed an action in 1913 to quiet title to all

---

[1]In a separate memorandum disposition filed today, we address the cross-appeal of Tahoe Reno Commercial Center, LLC. *United States v. Orr Water Ditch Co.*, No. 07-17021.

water rights in the Project area. The resulting legal activity became known as the *Orr Ditch* litigation.

An appointed Special Master held hearings, then issued a report and recommended a proposed decree in 1924. Two years later, the district court issued a temporary restraining order enforcing the proposed decree. In 1934, after a lapse of interest in the litigation, a drought prompted more activity. In 1935, the major parties to the litigation signed an agreement similar to the proposed decree that had been in effect on a "temporary" basis. Finally, in 1944, the district court entered its final decree that approved and incorporated the settlement.

Under the Decree, the Tribe owns Claims No. 1 and 2, the two most senior water rights on the Truckee River. A substantial portion of the water held under these rights was recently transferred "temporarily" from irrigation to in-stream use in order to allow the water to flow into the Pyramid Lake. *United States v. Orr Water Ditch Co. (Orr Ditch III)*, 391 F.3d 1077, 1079 (9th Cir. 2004).

In November 1998, the Nevada State Engineer granted the Tribe the right to all of the water remaining in the river after the Orr Ditch Decree rights and other rights were satisfied. We are informed by the parties that, at the time of briefing to this court, an appeal of this ruling was pending in Nevada state court. The Tribe's rights under the Engineer's 1998 ruling are based on Nevada law rather than the Orr Ditch Decree.

We have consistently interpreted the Orr Ditch Decree, as well as the related Alpine Decree, to provide for "federal district court review of decisions of the State Engineer regarding applications to change the place of diversion or manner or place of use of water rights derived from the Alpine and Orr Ditch Decrees." *United States v. Alpine Land & Reservoir Co. (Alpine II)*, 174 F.3d 1007, 1011 (9th Cir. 1999). Over the

past thirty years, numerous decisions of the Engineer pertaining to rights under these two decrees have been appealed to the federal district court and then to us. *See, e.g., United States v. Alpine Land & Reservoir Co. (Alpine I)*, 878 F.2d 1217 (9th Cir. 1989); *Alpine II*, 174 F.3d 1007; *United States v. Orr Water Ditch Co. (Orr Ditch II)*, 256 F.3d 935 (9th Cir. 2001); *United States v. Alpine Land & Reservoir Co. (Alpine III)*, 341 F.3d 1172 (9th Cir. 2003); *Orr Ditch III*, 391 F.3d 1077; *United States v. Truckee-Carson Irrigation Dist.*, 429 F.3d 902 (9th Cir. 2005); *United States v. Alpine Land & Reservoir Co. (Alpine IV)*, 510 F.3d 1035 (9th Cir. 2007).

The appeal now before us arises out of an allocation by the State Engineer of groundwater rights in the Tracy Segment Hydrological Basin. The Basin lies between the towns of Sparks in the west, Fernley in the east, and Virginia City in the south. The northern border runs roughly parallel to Interstate 80 between three and five miles north of the highway. At its northeastern tip, the Basin abuts the Pyramid Lake Paiute Tribe Reservation. A thirty-mile stretch of the Truckee River runs through the Basin on its way to Pyramid Lake. According to a study published by the United States Geological Survey in 2006 and relied upon by the State Engineer, the Truckee River is a gaining stretch as it runs through the Basin, receiving an average net gain of about 11,000 acre-feet per year from the Basin's groundwater unless there has been an over-allocation of that water.

Between 1998 and 2003, several parties applied for new groundwater allocations in the Basin. The Tribe and Churchill County opposed the majority of the applications, contending that the groundwater of the Basin was already fully appropriated and that the requested allocations would reduce the base flow of the Truckee River. They contended that this reduction would interfere, *inter alia*, with decreed water rights under the Orr Ditch Decree.

In June 2007, in Ruling 5747, the State Engineer granted most of the groundwater applications. The Engineer noted

that the United States Geological Survey had previously estimated that the "perennial yield" of the Basin is approximately 6,000 acre-feet per year resulting from groundwater recharge from precipitation. Even before the current applications were considered, groundwater allocations of 7,976 acre-feet per year had been granted. If the estimate of 6,000 acre-feet per year perennial yield is accurate, groundwater in the Basin was thus already over-allocated. After considering a wide range of estimates, the Engineer revised upward the estimated perennial yield of the Basin to approximately 11,500 acre-feet per year. Based on the revised estimate, the Engineer granted some of the new applications, concluding that they would not result in over-allocation of the groundwater in the Basin.

The Engineer concluded further that even if the new allocations were to result in over-allocation of the groundwater and a diminution of the base flow of the Truckee River, this would not conflict with any of the decreed rights to water in the river. Quoting an earlier Engineer ruling, the Engineer concluded "that the ground-water discharge to the Truckee River should not be counted as part of the [Tribe's] surface-water rights in the Truckee River . . . established under Claims No. 1 and 2 of the Orr Ditch Decree." The Engineer wrote that "there is nothing in the Orr Ditch Decree that indicates possible ground-water discharge to the Truckee River was even contemplated by the decree court as part of the water of the river." The Engineer also concluded that the ground-water discharge to the river should not be counted as part of the Tribe's rights established under the 1998 ruling in which the Tribe was granted, as a matter of state law, rights to the remaining flow of the river after all of the decreed water rights were satisfied.

The Tribe appealed the Engineer's ruling to the federal district court. The Tribe argued broadly that the district court had jurisdiction to review the Engineer's ruling, both as it affected its rights under the Decree and as it affected its rights under

the Engineer's 1998 ruling. The Engineer moved to dismiss for lack of subject matter jurisdiction.

The district court granted the motion to dismiss, writing:

> At its essence, the issue before this court is whether appellate jurisdiction over the rulings of the State Engineer is determined by reference to the water right[s] of the applicant, or by reference to any water rights that might be affected by the State Engineer's ruling, including that of the applicant . . . As recognized by the Tribe, this court has exclusive jurisdiction over the Truckee River waters. *See United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1107, 1011 (9th Cir. 1999). Section 540.450(1) [of Nev. Rev. Stat.] itself recognizes that, on stream systems on which a decree has already been entered, exclusive jurisdiction rests in the court issuing that decree.

> If exclusive jurisdiction is determined by reference to any water rights affected by a State Engineer's ruling, such "exclusive" jurisdiction could conceivably rest in two or three or more courts. An applicant seeking to appropriate water rights from a decreed stream system could be protested by an owner of water rights in a different decreed stream system, placing "exclusive jurisdiction" of the appeal in two different courts. Or, an applicant seeking water from a non-decreed system could be protested by two persons, each having water rights on different decreed water systems. Or, an applicant could be protested by a single entity having water rights on different decreed water systems. Again, in either latter case, two different courts would have "exclusive" jurisdiction to hear the appeal to the detriment of the other. The potential for such absurd results is avoided entirely if appellate jurisdiction is

determined by reference to the applicant's water rights.

The Tribe timely appealed.

## II. Standard of Review

We review *de novo* a dismissal for lack of subject matter jurisdiction. *Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974, 978 (9th Cir. 2006). We review a district court's factual findings for clear error. *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 984 n.7 (9th Cir. 2004). "The party asserting federal jurisdiction has the burden of establishing it." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002).

## III. Discussion

There are essentially two questions before us. First, does the Orr Ditch Decree forbid an allocation of groundwater by the State Engineer that has an adverse effect on the Tribe's decreed rights to water in the Truckee River? Second, if the Decree forbids such an allocation of groundwater, does the district court have subject matter jurisdiction over an appeal from a ruling of the Engineer that allegedly conflicts with the Decree? We answer "yes" to both questions.

### A. Extent of the Tribe's Decreed Rights

The State Engineer concluded that the Tribe's water rights under the Orr Ditch Decree could be diminished by groundwater allocations without violating the Decree. In the view of the Engineer, the Decree granted the Tribe rights only to the surface water flowing in the Truckee River. In his view, the Decree provided no protection against allocations of groundwater that would diminish the amount of surface water and thereby adversely affect the Tribe's decreed rights. For the reasons that follow, we disagree.

The Decree provides:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:
>
> That the parties, persons, corporations, intervenors, grantees, successors in interest and assigns and substituted parties above and hereinafter named and their successors in interest and assigns are, and each of them is, as against every other one, *hereby adjudged to be the owners of the water rights hereinafter specified and set forth and entitled and allowed to divert and use, from the Truckee River and its tributaries and from the streams, springs, drain and waste waters hereinafter mentioned*[.]

Decree at 10 (emphasis added). The Tribe is one of the parties named in the Decree.

The Decree granted the Tribe the two most senior rights to water from the Truckee River, Claims No. 1 and 2. Both claims provide water to the Tribe for use on the reservation. The Decree describes in Claim No. 1 the history leading to the grant of the rights conferred in the two claims:

> By order of the Commissioner of the General Land Office made on December 8, 1859, the lands comprising the Pyramid Lake Indian Reservation were withdrawn from the public domain for use and benefit of the Indians and this withdrawal was confirmed by order of the President on March 23, 1874. Thereby and by implication and by relation as of the date of December 8, 1859, *a reasonable amount of the water of the Truckee River,* which belonged to the United States under the cession of territory by Mexico in 1848 and *which was the only water available for the irrigation of these lands, became*

> *reserved for the needs of the Indians on the reserva-*
> *tion.*

*Id.* (emphasis added).

**[1]** We recognize that there is no language in the Decree explicitly protecting the Tribe's decreed rights in Claims No. 1 and 2 from diminution of the flow of the river resulting from allocation of groundwater to other users. But the Engineer overstated the matter when he wrote that "there is nothing in the Orr Ditch Decree that indicates possible groundwater discharge to the Truckee River was even contemplated by the decree court as part of the water of the river." The Decree indicates that the water rights granted to the Tribe in Claims No. 1 and 2 were intended to fulfill the purpose of the United States in withdrawing land from the public domain for the Tribe's reservation and reserving "a reasonable amount of water" for use on the reservation. It is inconsistent with that purpose to allocate water to other users if that allocation diminishes the Tribe's reserved water supply.

**[2]** Surface water contributes to groundwater, and groundwater contributes to surface water. The reciprocal hydraulic connection between groundwater and surface water has been known to both the legal and professional communities for many years. The Supreme Court wrote in *Kansas v. Colorado*, 206 U.S. 46, 114-15 (1907), "If the bed of a stream is not solid rock, but earth, through which water will percolate, . . . undoubtedly water will be found many feet below the surface, and the lighter the soil the more easily will it find its way downward and the more water will be discoverable by wells . . . ." The Court wrote in *Snake Creek Mining & Tunnel Co. v. Midway Irrigation Co.*, 260 U.S. 596, 598 (1923), "The waters intercepted and collected . . . are percolating waters, which . . . found their way naturally . . . through the rocks, gravel, and soil of the mountain into open springs near the stream, and thence by surface channels into the stream." In a law review article published two years before the entry of the

Orr Ditch Decree, the authors emphasized the importance of the hydraulic connection: "The significance of the fact that ground water never occurs as a stationary water body should be stressed. Ordinarily, the subsurface reservoir is continuously receiving additions by influent seepage from rainfall and surface water bodies and is always discharging water by natural processes. In the subsurface reservoir ground water is percolating toward the discharge area; no static ground-water bodies are known to exist." C.F. Tolman & Amy C. Stipp, *Analysis of Legal Concepts of Subflow and Percolating Waters*, 21 Or. L. Rev. 113, 129 (1942).

**[3]** The district court entering the Orr Ditch Decree would have known about the relationship between surface water and groundwater. The Decree expressly states that Claims No. 1 and 2 fulfill the purpose of the United States in establishing the Tribe's reservation. In the words of the Decree, that purpose was to withdraw from the public lands "the lands comprising the Pyramid Lake Indian Reservation," and to "reserve" a "reasonable amount of water of the Truckee River" to meet the "needs of the Indians on the reservation." This statement of intent to reserve a reasonable amount of water makes clear that the proper construction of the Decree is that the water rights granted in Claims No. 1 and 2 cannot be defeated by allocation of water to others—whether by allocation of surface water or groundwater.

Even without such an explicit statement, we would come to the same conclusion based on *Winters v. United States*, 207 U.S. 564 (1908), which dealt with water rights on the Fort Belknap Indian Reservation. The Court in *Winters* held that sufficient water was reserved to serve the needs of the Indians, despite the absence of clear words so specifying in the agreement establishing the reservation. The Court invoked a rule of interpretation that would further the purpose of the agreement:

> By a rule of interpretation of agreements and treaties with the Indians, ambiguities occurring will be

resolved from the standpoint of the Indians. And the rule should certainly be applied to determine between two inferences, one of which would support the purpose of the agreement and the other impair or defeat it. On account of their relations to the government, it cannot be supported that the Indians were alert to exclude by formal words every inference which might militate against or defeat the declared purpose of themselves and the government[.]

*Id.* at 576-77.

**[4]** We therefore hold that the Decree protects the Tribe from allocations of groundwater that would adversely affect its decreed water rights under Claims No. 1 or 2.

## B.   Jurisdiction of the District Court

**[5]** The district court's subject matter jurisdiction over appeals from decisions of the State Engineer is an odd amalgam. The court's jurisdiction is based on the ability of a court of equity to enforce and administer its decrees. As we wrote in *Alpine I*:

> [T]he federal district court acts as an appellate court for decisions of the state Engineer. Needless to say, such jurisdiction is highly extraordinary.
>
> We specifically approved of this jurisdictional arrangement in *United States v. Alpine Land & Reservation Co.*, 697 F.2d 851, 858 (9th Cir. 1983), *cert. denied*, 464 U.S. 863 (1983). The district court's jurisdiction is established as an adjunct to its jurisdiction over the quiet title action originally filed by the United States. . . . The district court's equity jurisdiction was properly invoked to review the Engineer's decision in order to "provide full vindica-

tion of the admitted federal interests in the operation of federal reclamation projects." *Id.* at 858.

878 F.2d at 1219 n.2 (some citations omitted).

**[6]** Nevada law also recognizes this unique jurisdictional arrangement. Specifically, it provides:

> Any person feeling himself aggrieved by any order or decision of the State Engineer . . . when the order or decision relates to the administration of determined rights . . . may have the same reviewed by a proceeding for that purpose, insofar as may be in the nature of an appeal, which must be initiated in the proper court of the county in which the matters affected or a portion thereof are situated, but *on stream systems where a decree of court has been entered, the action must be initiated in the court that entered the decree.*

Nev. Rev. Stat. § 533.450(1) (emphasis added); *see also Orr Ditch I*, 914 F.2d at 1309 n.8 ("Nevada law thus supports the system adopted by the federal courts for appeals of Engineer decisions on federal-court-decreed water rights."); *Alpine II*, 174 F.3d at 1011 ("[W]e have interpreted Nevada law, which provides for jurisdiction of appeals from decisions of the State Engineer 'in the court that entered the decree,' as providing for federal court review under the Orr Ditch Decree.").

**[7]** We hold today that the Decree protects the Tribe's water rights under Claims No. 1 and 2 from diminution resulting from allocation of groundwater rights. This holding necessarily means that any allocation of groundwater rights by the State Engineer that allegedly diminishes the Tribe's decreed water rights comes within the clause of Nev. Rev. Stat. § 533.450(1) that provides for appellate review "in the court that entered the decree." The decree in this case was entered by the federal district court for the District of Nevada. We

therefore hold that the district court has subject matter jurisdiction over the Tribe's appeal from Ruling 5747 insofar as that ruling may adversely affect the Tribe's decreed rights under Claims No. 1 and 2.

[8] We note, however, that the district court does not have jurisdiction over the Tribe's appeal from that ruling insofar as it may adversely affect the Tribe's rights under the Engineer's 1998 ruling granting the Tribe the right to water remaining in the Truckee River after decreed and other rights have been satisfied. The district court does not have jurisdiction because the Engineer's 1998 ruling was based on state law. The part of the Engineer's current ruling allegedly affecting the Tribe's rights under his 1998 ruling has no effect on the Tribe's rights under the Decree.

The district court accurately foresaw that practical difficulties would result from a conclusion that it has jurisdiction over an appeal from an Engineer's ruling allocating groundwater from the Basin. But the appeal will be limited, and the practical difficulties will be manageable. The district court was asked to decide only one question on appeal: Will the Engineer's allocation of groundwater rights adversely affect the Tribe's rights under the Decree? If the court concludes that the allocation will have an adverse effect on the Tribe's decreed rights, it will instruct the Engineer to reduce the amount of allocated groundwater rights by an amount necessary to eliminate that effect. If the court concludes that the allocation will not adversely affect the Tribe's decreed rights, it will simply affirm the Engineer's ruling. In neither case will the district court have the authority in the Tribe's appeal to tell the Engineer how to allocate groundwater rights among the various applicants. To the extent that groundwater may be allocated consistent with protection of the Tribe's decreed rights, the amount of the allocations and the distribution among the applicants are of no concern to the district court in the Tribe's appeal.

The district court also accurately stated that the exercise of subject matter jurisdiction by the federal courts would be inconsistent with the general principle of water law that a single court should have exclusive jurisdiction over an interrelated system of water rights. *See, e.g.*, *State Eng'r v. S. Fork Band of the Te-Moak Tribe of W. Shoshone Indians of Nev.*, 339 F.3d 804, 809 (9th Cir. 2003) (referring to the "ancient and oft-repeated . . . doctrine of prior exclusive jurisdiction—that when a court of competent jurisdiction has obtained possession, custody, or control of particular property, that possession may not be disturbed by any other court" (citation omitted)). But that principle, while valid and important, is not an inviolable rule.

Indeed, we have seen already an exception to the general principle in this very matter. As noted above, the State Engineer in 1998 granted to the Tribe the right to take any water remaining in the Truckee River after decreed and other rights have been satisfied. It is undisputed that, as a general proposition, decisions of the State Engineer allocating the surface waters of the Truckee River are appealable to the district court. This is so because the district court administers the Orr Ditch Decree, which adjudicated rights to water in the river. But the appeal of the Engineer's 1998 ruling did not go to the district court even though the ruling allocated rights to water in the river. Rather, it appropriately went to the Nevada state courts, for that ruling was based on state law and did not affect any rights under the Decree.

## Conclusion

**[9]** For the foregoing reasons, we hold that the Tribe's decreed rights to water from the Truckee River under the Orr Ditch Decree may not be adversely affected by allocations of groundwater in the Tracy Segment Hydrographic Basin. We hold, further, that the district court has subject matter jurisdiction to hear the Tribe's appeal from the State Engineer's Ruling 5747 insofar as the allocation of groundwater rights is

alleged to affect adversely the Tribe's decreed water rights under Claims No. 1 and 2.

**REVERSED and REMANDED.**