In re: NEVADA STATE ENGINEER RULING NO. 5823.

CHURCHILL COUNTY, NEVADA, a Political Subdivision of the State of Nevada; and PYRAMID LAKE PAIUTE TRIBE, Appellants, v. STATE ENGINEER, THE STATE OF NEVADA, DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, DIVISION OF WATER RESOURCES; ASPEN CREEK, LLC; DAYTON VALLEY INVESTORS, LLC; LYON COUNTY; STANTON PARK DEVELOPMENT, INC.; CARSON TAHOE REGIONAL HEALTHCARE; R & B LAND INVESTMENTS; DENNIS SMITH; and MARCIA BENNETT SMITH, Respondents.

No. 52963

May 31, 2012

277 P.3d 449

*Arthur E. Mallory*, District Attorney, and *Craig B. Mingay*, Deputy District Attorney, Churchill County, for Appellant Churchill County.

*Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP*, and *Don Springmeyer* and *Christopher W. Mixson*, Las Vegas, for Appellant Pyramid Lake Paiute Tribe.

*Allison, MacKenzie, Pavlakis, Wright & Fagan, Ltd.*, and *Karen A. Peterson*, Carson City, for Respondent Carson Tahoe Regional Healthcare.

*Catherine Cortez Masto*, Attorney General, and *Bryan L. Stockton*, Deputy Attorney General, Carson City, for Respondent Nevada State Engineer.

*George N. Benesch*, Reno, for Respondent Lyon County.

*Holland & Hart LLP* and *Alex J. Flangas*, Reno, for Respondent R & B Land Investments.

*J.M. Clouser & Associates, Ltd.*, and *Justin M. Clouser*, Minden, for Respondents Dennis Smith and Marcia Bennett Smith.

*Law Offices of John P. Schlegelmilch, Ltd.*, and *Sandra-Mae Pickens*, Yerington; *Thorndal Armstrong Delk Balkenbush & Eisinger* and *Brent T. Kolvet*, Reno, for Respondent Stanton Park Development, Inc.

*Robertson & Benevento* and *G. David Robertson* and *Jarrad C. Miller*, Reno, for Respondents Aspen Creek, LLC; and Dayton Valley Investors, LLC.

*Brownstein Hyatt Farber Schreck, LLP*, and *Gary M. Kvistad* and *Bradley J. Herrema*, Las Vegas; *Brownstein Hyatt Farber Schreck, LLP*, and *Michael A. Gheleta* and *Geoffrey M. Williamson*, Denver, Colorado, for Amicus Curiae Town of Minden, Nevada.

## OPINION

By the Court, PICKERING, J.:

NRS 533.450(1) affords judicial review "in the nature of an appeal" to "[a]ny person feeling aggrieved by any order or decision of the State [Water] Engineer . . . affecting the person's interests." The appeal "must be initiated in the proper court of the county in which the matters affected or a portion thereof are situated." *Id.* In this case, we consider what the statute means by "matters affected." The district court held that the phrase refers to the point of diversion of the applicants' existing or proposed water rights, nobody else's. It further held that filing for review in an improper county does not just misplace venue, a defect that may be cured or waived, but defeats subject matter jurisdiction, requiring dismissal. Thus, since the protesters filed their appeals in Churchill County, where their rights or interests allegedly would be affected, as opposed to Lyon County, where the applicants' groundwater appropriations lie, the district court summarily dismissed. By then, NRS 533.450(1)'s 30-day limit on seeking judicial review had passed.

We conclude that the district court read the statute too restrictively. We therefore vacate the jurisdictional dismissal and remand for further proceedings consistent with this opinion.

## I.

## A.

This case concerns State Engineer Ruling 5823, allocating groundwater rights in the Dayton Valley Hydrographic Basin (the Basin). Most of the applications considered in Ruling 5823 asked to change the point of diversion, place, and manner of use of existing groundwater appropriations. However, two were for new groundwater appropriations. The Basin lies wholly within Lyon County.

Appellants Churchill County and the Pyramid Lake Paiute Tribe (the Tribe) protested the applications before the State Engineer. They maintain that the Basin is "severely over-appropriated." Because the Basin's groundwater is hydrologically connected to the surface waters of the Carson River, which flows into the Lahontan Reservoir, they argued to the State Engineer that approving the applications in Lyon County would deplete these waters, in which they have an interest, in neighboring Churchill County.

Churchill County holds decreed surface water rights in the Carson River, but the Tribe does not. Nonetheless, the Tribe reasons that the applications considered in Ruling 5823 affect its interests because depleting the Carson River surface water will decrease inflow into the Lahontan Reservoir. In turn, Newlands Reclamation Project senior water rights holders would be entitled to divert Truckee River surface water to compensate for insufficient flows from the Carson River. This water diversion would decrease the Truckee River's flow into Pyramid Lake, thus affecting the Tribe's interests.

In Ruling 5823, the State Engineer rejected both Churchill County's and the Tribe's protests and granted all pending applications.

## B.

Churchill County and the Tribe appealed, invoking NRS 533.450(1), which reads in pertinent part as follows:

> Any person feeling aggrieved by any order or decision of the State Engineer, acting in person or through the assistants of the State Engineer or the water commissioner, affecting the person's interests, when the order or decision relates to the administration of determined rights or is made pursuant to NRS 533.270 to 533.445, inclusive, or NRS 533.481, 534.193, 535.200 or 536.200, may have the same reviewed by a proceeding for that purpose, insofar as may be in the nature of an appeal, which must be initiated in the proper court of the county in which the matters affected or a portion

> thereof are situated, but on stream systems where a decree of court has been entered, the action must be initiated in the court that entered the decree.

Deeming themselves "aggrieved" and the "matters affected or a portion thereof" to be situate in Churchill County, the County and the Tribe filed their appeals in the Third Judicial District Court in Churchill County. In addition, the Tribe filed a separate appeal in the federal court that had issued the decree governing use of Carson River water, *United States v. Alpine Land & Reservoir Co.*, 503 F. Supp. 877, 879-81 (D. Nev. 1980), *aff'd as modified*, 697 F.2d 851 (9th Cir. 1983) (the *Alpine* decree), relying on the clause of exception in NRS 533.450(1) ("but on stream systems where a decree of court has been entered, the action must be initiated in the court that entered the decree").[1]

The State Engineer responded to the Third Judicial District Court appeals with a demand to change venue from Churchill to Lyon County. At the time, the Third Judicial District comprised both Churchill and Lyon Counties. In practical terms, therefore, all the State Engineer sought was an intradistrict change of venue, from one county court to another, within the same judicial district.[2] Respondents Aspen Creek, LLC, and Dayton Valley Investors, LLC (collectively, Aspen Creek), went further, filing a motion to dismiss that challenged subject matter jurisdiction. Although some of the other respondents joined Aspen Creek's motion to dismiss, the State Engineer did not, standing on his venue challenge.

The motions to change venue and to dismiss both argued that, under NRS 533.450(1), "the proper court of the county in which the matters affected or a portion thereof are situated" was the Third Judicial District Court in Lyon County, because that is where the applicants' water rights are or would be located. Not surprisingly, Churchill County and the Tribe disagreed. In their view, NRS 533.450(1) by its terms ("or a portion thereof . . .") contemplates more than one possible forum and, in using the phrase "matters affected," refers not just to an applicant's interests but to a protester's as well. Thus, the district courts in either Churchill County or Lyon County could entertain their appeals.

Similar arguments were made to the *Alpine* decree court on motions to dismiss the Tribe's parallel federal appeal. The *Alpine* decree court ruled before the district court in this case did. *United States v. Alpine Land & Reservoir Co.*, Case Subfile No.

---

[1]The Tribe's Churchill County petition describes its federal *Alpine* decree court petition as "primary" to its "secondary" state court petition.

[2]Effective January 1, 2012, Churchill County was removed from the Third Judicial District to become the newly created Tenth Judicial District. The Third and Tenth Judicial Districts now are single-county districts, encompassing Lyon and Churchill Counties, respectively. 2011 Nev. Stat., ch. 316, § 1, at 1772-73.

3:73-cv-00203-LDG, Equity No. 3:73-cv-00183-LDG (D. Nev. July 3, 2008) (*Alpine* 2008 order). It accepted arguendo (as do we) that Ruling 5823 affected the Tribe's rights in the Truckee River, as adjudicated in *United States v. Orr Water Ditch Co.*, Equity No. A-3 (D. Nev. 1944) (the *Orr Ditch* decree), due to the alleged impact on the surface waters of the Carson River outlined above. Nonetheless, the *Alpine* decree court rejected the Tribe's argument that this qualified its appeal under the clause in NRS 533.450(1) providing, "but on stream systems where a decree of court has been entered, the action must be initiated in the court that entered the decree." According to the *Alpine* decree court, alleging that a state engineer's ruling affects federally decreed water rights does not thereby "confer jurisdiction" on the decree court. *Alpine* 2008 Order, slip op. at 3. "Rather," the court continued, NRS 533.450(1) reposes exclusive jurisdiction in the court where the applicant's actual or proposed water rights are located, meaning in the context of Ruling 5823 "that such jurisdiction is in the proper court in Lyon County, as that is the county in which the Dayton Valley Hydrographic Basin is located." *Id.* Accordingly, the *Alpine* decree court dismissed the Tribe's appeal of Ruling 5823.

The district court in this case accepted Aspen Creek's invitation to take judicial notice of the *Alpine* 2008 order. It "agree[d] with the *Alpine* court that it is the location of the water rights of the applicant that determines which court has jurisdiction to hear an appeal from a State Engineer's decision." Given the admitted fact that "[t]he rights granted or altered in State Engineer Ruling 5823 are located in Lyon County," it concluded that it did not have "subject matter jurisdiction over th[e] appeal." Lacking subject matter jurisdiction, the district court deemed itself powerless to order a change of venue, and dismissed. It did so based on the pleadings and the State Engineer's written ruling, without considering the administrative record, which had yet to be filed when its order was entered.

From this order of dismissal, Churchill County and the Tribe have appealed.

### C.

After the principal briefs in this appeal were filed, the Ninth Circuit Court of Appeals vacated the *Alpine* 2008 order. *United States v. Alpine Land & Reservoir Co.*, 385 F. App'x 770 (9th Cir. 2010). It did so based on *United States v. Orr Water Ditch Co.*, 600 F.3d 1152 (9th Cir. 2010). The 2010 *Orr Ditch* decision rejects the proposition that the location of the applicant's water rights determines jurisdiction under NRS 533.450(1), at least in cases where the protester's allegedly affected rights are federally decreed; it holds that "any allocation of groundwater rights by the State Engineer that allegedly diminishes the Tribe's decreed water

rights comes within the clause of [NRS] 533.450(1) that provides for appellate review 'in the court that entered the decree.' " *Id.* at 1160.[3]

This court requested and received further briefing on the impact on this appeal of the decisions in *Alpine Land & Reservoir Co.*, 385 F. App'x 770, and *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, as well as the federal district court's order on remand from the Ninth Circuit in *United States v. Alpine Land & Reservoir Co.*, 788 F. Supp. 2d 1209 (D. Nev. 2011). *See also United States v. Alpine Land & Reservoir Co.*, Nos. 3-73-cv-00183-LDG, 3:37-cv-00202-LDG, 2011 WL 2470627 (D. Nev. June 17, 2011). We also asked the parties to clarify whether the interests of Churchill County and the Tribe assertedly affected by Ruling 5823 derive from water rights that are decreed, permitted, or a combination of both, a question the parties could not definitively answer given the limited record available.[4]

## II.

The sole issue presented by this appeal concerns subject matter jurisdiction, which the district court determined was lacking based on its reading of NRS 533.450(1), the pleadings, and State Engineer Ruling 5823. When decided on pleadings alone, "[s]ubject matter jurisdiction [presents] a question of law subject to de novo review." *Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009). "[Q]uestions of statutory interpretation" also receive de novo review. *Bigpond v. State*, 128 Nev. 108, 114, 270 P.3d 1244, 1248 (2012).

A decision of the State Engineer enjoys a presumption of correctness. NRS 533.450(10). The presumption does not extend to

---

[3]Of note, the Tribe's appeal to the *Alpine* decree court of Ruling 5823 was not, as in *Orr Ditch*, an appeal to the court that established the decreed water rights of the Tribe allegedly affected by the protested groundwater allocation. *See Alpine Land & Reservoir Co.*, 385 F. App'x at 771 (noting that the Tribe "relied in its challenge not on any right to Carson River water," adjudicated in the *Alpine* decree, "but on the potential downstream impact of the allocations on the Tribe's decreed rights to the Truckee River," adjudicated in the *Orr Ditch* decree). Nonetheless, the Ninth Circuit *Alpine* panel concluded that, "[c]onsistent with our holding in *Orr[ Ditch*, 600 F.3d 1152], subject matter jurisdiction exists over the Tribe's appeal from the State Engineer's Ruling 5823 . . . insofar as the allocation of Dayton Valley Hydrographic Basin groundwater rights is plausibly alleged to affect adversely the Tribe's decreed water rights under the Orr Ditch Decree." *Id.* at 772.

[4]On motion by a respondent, this court struck the excerpts of the administrative record in appellants' appendix, as the administrative record was never filed with the district court. NRAP 30(g)(1) ("the appendix [must] consist[ ] of true and correct copies of the papers in the district court file").

"purely legal questions," such as "the construction of a statute," as to which "the reviewing court may undertake independent review." *Town of Eureka v. State Engineer*, 108 Nev. 163, 165, 826 P.2d 948, 949 (1992). Even so, this court recognizes the State Engineer's expertise and looks to his interpretation of a Nevada water law statute as persuasive, if not mandatory, authority. *Id.* at 165-66, 826 P.2d at 950. Put another way, "[w]hile the State Engineer's interpretation of a statute [may be] persuasive, it is not controlling." *Id.*; *accord State v. State Engineer*, 104 Nev. 709, 713, 766 P.2d 263, 266 (1988).

## A.

Our analysis begins with NRS 533.450(1)'s text. *See* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 47:1, at 274-75 (7th ed. 2007) ("The starting point in statutory construction is to read and examine the text of the act and draw inferences concerning the meaning from its composition and structure." (footnote omitted)); Oliver Wendell Holmes, *Collected Legal Papers* 207 (New York 1920) ("we do not inquire what the legislature meant; we ask only what the statute means").

NRS 533.450(1) starts out with an introductory grant clause that gives "[*a*]*ny person* feeling aggrieved by *any* order or decision of the State Engineer . . . *affecting the person's interests*" a right to judicial review. (Emphasis added.) The phrase "any person" signifies inclusiveness, not limitation. *See Western Surety Company v. ADCO Credit*, 127 Nev. 100, 104, 251 P.3d 714, 716-17 (2011). Read literally, and without more, NRS 533.450(1)'s grant clause thus extends the right of judicial review to applicants and protesters alike. *See Howell v. State Engineer*, 124 Nev. 1222, 1228, 197 P.3d 1044, 1048 (2008) ("so long as the [State Engineer's] decision affects a person's interests that relate to the administration of determined rights, and is a final written determination on the issue, the aggrieved party may properly challenge it through a petition for judicial review" under NRS 533.450(1)).

Having established a right of judicial review in favor of applicants and protesters alike, the statute continues with its forum clause. This clause specifies that the judicial review proceeding "must be initiated in the proper court of the county in which the matters affected or a portion thereof are situated." NRS 533.450(1). "Must" is mandatory, as distinguished from the permissive "may." *Fourchier v. McNeil Const. Co.*, 68 Nev. 109, 122, 227 P.2d 429, 435 (1951). Thus, to obtain judicial review under NRS 533.450(1), a "person" aggrieved "must" file the

proceeding in "the proper court of the county in which the matters affected or a portion thereof are situated." But this does not signify, as the district court held, that only a single court in a single county will do—much less that the "matters affected" must be judged from the perspective of the applicant, not a protester. On the contrary, the phrase "or a portion thereof" contemplates multiple potential forums: If "a portion" of the "matters affected" being situated in the forum county satisfies the statute, so too, should the remainder of the "matters affected" qualify the counties in which they are situated. Further, the forum clause's use of "matters *affected*" hearkens back to the language in the introductory clause that grants judicial review to "[a]ny person feeling aggrieved by any order or decision of the State Engineer . . . *affecting* the person's interests." NRS 533.450(1) (emphasis added).[5] Accepting that "[t]he same words used twice in the same [statute] are presumed to have the same meaning," 2A Singer & Singer, *Statutes and Statutory Construction*, *supra*, § 46:6, at 249; *see Savage v. Pierson*, 123 Nev. 86, 94, 157 P.3d 697, 702 (2007), the solipsistic view of the respondents that "matters affected" only refers to their interests, not those of one or more protesters, is unreasonable, given that the grant clause in the same sentence of the same statute gives "any person" a right of judicial review of "any order or decision of the State Engineer . . . *affecting* the person's interests."

NRS 533.450(1) continues with a clause of exception: "but on stream systems where a decree of court has been entered, the action must be initiated in the court that entered the decree." The statute's introductory grant and forum clauses have been in place since 1915. 1915 Nev. Stat., ch. 253, § 13, at 384. The clause of exception was added in 1951. 1951 Nev. Stat., ch. 110, § 11, at 140. The clause of exception reinforces the conclusion that NRS 533.450(1) contemplates more than one possible forum—the decree court and other non-decree courts that otherwise, without this clause, could potentially hear the appeal.

Nothing in NRS 533.450(1)'s text, in short, vests exclusive jurisdiction in the court of the county where all or part of the applicant's water rights lie (unless perhaps the clause of exception ap-

---

[5]The Legislature knew how to limit review to the county or counties where the applicant's water rights lie, as it had done so in an earlier water law. *Cf.* Compiled Laws of Nevada § 366, at 81 (Cutting 1900) (providing that "an applicant feeling himself aggrieved by any endorsement made by the Board of Water Commissioners . . . may . . . take an appeal therefrom to the District Court of the county in which is situated the point of diversion of the proposed appropriation"). This language was not used in the 1913 water law, 1913 Nev. Stat., ch. 140, § 75, at 216, as amended in 1915, 1915 Nev. Stat., ch. 253, § 13, at 384, in the section that ultimately became NRS 533.450(1).

plies to the applicant's rights, which isn't suggested here). Instead, the statute's wording plainly contemplates more than one permissible forum, depending on the location, nature, and origin of the interests assertedly affected.

### B.

Relying on the later-vacated order of the *Alpine* decree court, *Alpine* 2008 order, slip op. at 3, the district court concluded that NRS 533.450(1) is ambiguous and that the result produced by a literal reading of NRS 533.450(1) was unreasonable. In reaching this conclusion, the district court, like the *Alpine* decree court, relied primarily on the final clause of exception that was added to NRS 533.450(1) in 1951.[6] It did so even though its jurisdiction was not invoked on the basis that it was a decree court but, rather, under the general forum clause in NRS 533.450(1).

In the district court's words, "[t]he Legislature clearly intended [the clause of exception in] NRS 533.450(1) to confer continuing and exclusive jurisdiction of State Engineer decisions that 'affect' water rights on decreed stream systems on the one court that entered the decree." Otherwise, "the interests claimed to be affected by one decision could be water rights on two different stream systems for which different decrees of court have already been entered by different courts." From this, the district court concluded that, "[i]n order to accomplish the intended exclusive jurisdiction over appeals from decisions deciding water rights on st[r]eam systems, it is necessary to define the 'matters affected' by a State Engineer[']s decision as the water rights of the applicant," in both decree-court and non-decree-court cases.

But limiting jurisdiction under NRS 533.450(1) to the court of the county where the applicant's water rights lie creates its own problems with multiple potential forums and creates an even more profound conflict between a decree court's ongoing jurisdiction and a second court's assumption of such jurisdiction—a conflict that the clause of exception in NRS 533.450(1) seems designed to mitigate, to the extent possible. The Ninth Circuit's recent *Orr Ditch* decision, 600 F.3d at 1154, 1159-61, illustrates the problems perfectly.

As the 2010 *Orr Ditch* decision recognizes, federal "subject matter jurisdiction over appeals from decisions of the State Engi-

---

[6]The district court relied on the forum clause's reference to "the proper court of the county" to establish ambiguity as to whether NRS 533.450(1) meant to establish a single court with exclusive jurisdiction or multiple potential forums. We interpret the reference to "the proper court" as signifying venue, not jurisdictional limitations. *See infra* § II.D.

neer is an odd amalgam,'' a '' 'highly extraordinary,' '' "unique jurisdictional arrangement.'' *Id.* at 1159 (quoting *United States v. Alpine Land & Reservoir Co.*, 878 F.2d 1217, 1219 n.2 (9th Cir. 1989)). In appeals of decisions affecting federally decreed rights, jurisdiction rests not only on NRS 533.450(1), but also "on the ability of a court of equity to enforce and administer its decrees.'' *Id.*; *see State Engineer of NV v. South Fork Band of Te-Moak*, 339 F.3d 804, 813-14 (9th Cir. 2003) (applying the doctrine of prior exclusive jurisdiction to affirm the trial court's abstention ruling in a federal suit to enforce Sixth Judicial District Court Humboldt Decree rights). To the extent an order or decision of the State Engineer affects a protester's senior, federally decreed rights, the decree court has jurisdiction over the appeal. *Orr Ditch*, 600 F.3d at 1160. Such jurisdiction is limited, however, to assessing and, if appropriate, directing the State Engineer to correct the adverse effect on the senior, federally decreed rights. *Id.* To the extent an appeal asserts that state-decreed or state-permitted rights are adversely affected, jurisdiction lies in the "proper court of the county in which the matters affected or a portion thereof are situated.'' NRS 533.450(1); *see Orr Ditch*, 600 F.3d at 1160.

*Orr Ditch* focused on the jurisdiction of a federal decree court, pursuant to the clause of exception in NRS 533.450(1). However, its holding that a protester whose decreed rights are adversely affected by a State Engineer's order or decision can appeal to the decree court is inconsistent with the district court's decision in this case that the location of the applicant's water rights determines subject matter jurisdiction in this context—as, indeed, another panel of the Ninth Circuit held in *Alpine Land & Reservoir Co.*, 385 F. App'x 770, when it reversed the *Alpine* 2008 order. While the Ninth Circuit's interpretation of a Nevada statute on a matter of state law does not constitute mandatory precedent, *Custom Cabinet Factory of N.Y. v. Dist. Ct.*, 119 Nev. 51, 54, 62 P.3d 741, 742-43 (2003), *overruled on other grounds by Winston Products Co. v. DeBoer*, 122 Nev. 517, 134 P.3d 726 (2006), we nonetheless respect such authority as persuasive. *Carlton v. Manuel*, 64 Nev. 570, 584, 187 P.2d 558, 565 (1947). And more fundamentally, the 2010 *Orr Ditch* decision rests both on the Ninth Circuit's interpretation of NRS 533.450(1) and its interpretation of its own unique jurisdiction as a federal decree court. To read NRS 533.450(1) as vesting exclusive subject matter jurisdiction in the court of the county where all or part of the applicant's actual or proposed water rights lie would create conflict with the 2010 *Orr Ditch* decision and, ultimately, within NRS 533.450(1) itself, a result we reject.

## C.

Our holding that NRS 533.450(1) does not limit subject matter jurisdiction according to the location of an applicant's water rights is not inconsistent with *Jahn v. District Court*, 58 Nev. 204, 73 P.2d 499 (1937), although several respondents argue otherwise. *Jahn* grew out of the long-running and contentious litigation by Humboldt Lovelock Irrigation, Light & Power Company (HLILP), which established the Pitt-Taylor Reservoirs, on the one hand, and the State Engineer and the United States, on the other, over the establishment of the Rye Patch Reservoir. *See United States v. Humboldt Lovelock Irr. Light & P. Co.*, 97 F.2d 38, 39-42 (9th Cir. 1938); Gray Mashburn & W. T. Mathews, *The Humboldt River Adjudication*, at v-vii (1943); *see also Carpenter v. District Court*, 59 Nev. 42, 73 P.2d 1310 (1937) (prohibiting the Humboldt County district court from granting new trials in favor of noncontest claimants seeking to reopen the decree adjudicating rights to Humboldt River waters), *aff'd on reh'g*, 59 Nev. 48, 84 P.2d 489 (1938).

The issue that divided the parties in *Jahn* was whether HLILP could proceed under section 36½ of the water law (now NRS 533.220(1)) with a request that the decree court direct the State Engineer to act as HLILP demanded or was limited to, and should have initiated, a proceeding for review under section 75 (now NRS 533.450(1)). *Jahn*, 58 Nev. at 206-08 (reprinting the parties' arguments); *id.* at 211-12, 73 P.2d at 501-02. The court held that the remedy afforded by section 75 was exclusive, and that HLILP could not proceed under section 36½ or pursuant to the inherent powers of the decree court, which was located in Humboldt County. *Jahn*, 58 Nev. at 213, 73 P.2d at 502 ("As the water law . . . does not contemplate such a procedure in the district court as was initiated by the company [HLILP], the law does not confer the right of appeal from the order in question.").

The *Jahn* opinion could have begun and ended there, since HLILP had proceeded under section 36½, not section 75. The court offered the following additional observation, however, on which several respondents rely here:

> In pursuing the remedy provided for in section 75 of the water law (N.C.L., sec. 7961), it is required that the proceeding for the remedy be initiated in the proper court of the county in which the matters affected, or a portion thereof, are situated. Such matters in this case being situated in Pershing county, the district court in and for the county of Humboldt is without jurisdiction to entertain the proceeding.

*Id.* This statement is dictum but does not assist respondents in any event, as both HLILP's Pitt-Taylor Reservoirs and the Rye Patch

Reservoir are located in Pershing County, not Humboldt County. *See id.* Thus, the statement quoted above from *Jahn* does not support the applicant-based jurisdictional rule for which respondents contend.[7]

## D.

We share the Ninth Circuit's solicitude for the "general principle of water law that a single court should have exclusive jurisdiction over an interrelated system of water rights," and its concern with the "practical difficulties" in vesting jurisdiction in more than one court. *Orr Ditch*, 600 F.3d at 1160. "But th[e former] principle, while valid and important, is not an inviolable rule," *id.*, and the practical difficulties can be alleviated in significant part by recognizing that the general forum clause in NRS 533.450(1) addresses venue, rather than subject matter jurisdiction. *Compare* NRS 13.050 (providing for change of venue in proceedings not brought in "the proper county") *with* NRS 533.165 (analogously recognizing and providing a "procedure when [an unadjudicated] stream system [is located] in two or more judicial districts," which is that the judges of the different courts shall decide which will be the decree court). Such an approach is consistent with the language in NRS 533.450(1)'s forum clause (the "proper court of the county" where "the matters affected or a portion thereof are situated"), which speaks the language of venue, *see* NRS 13.010(2) (addressing venue in terms of "the county in which the subject of the action, or some part thereof, is situated"); NRS 13.050 ("[i]f the county designated . . . be not the proper county," venue may be changed), rather than that of subject matter jurisdiction. *Landreth v. Malik*, 127 Nev. 175, 180-81, 251 P.3d 163, 168-69 (2011) (holding that Nev. Const. art. 6, § 6(1) vests general jurisdiction in all district court judges equally and rejecting the argument that the Legislature can create family courts as district courts of limited, not general, jurisdiction). It also comports with the position taken by the State Engineer, who took a venue-based approach in the district court, where he moved to change venue—not to dismiss—a position to which he returned in his supplemental

---

[7]To the extent this statement in *Jahn* may be read to hold that the decree court lacks jurisdiction under section 75 to entertain appeals from decisions affecting decreed rights—a point neither side argued in *Jahn*—its holding was abrogated by the 1951 amendments that added the final clause of exception to NRS 533.450(1). 1951 Nev. Stat., ch. 110, § 11, at 140. *See also Orr Ditch*, 600 F.3d at 1160 (construing the clause of exception in NRS 533.450(1) as conferring jurisdiction on a decree court to hear appeals from decisions or orders to the extent of their effect on decreed rights).

brief to this court.[8] *See State v. State Engineer*, 104 Nev. at 713, 766 P.2d at 266 ("While not controlling, [the State Engineer's] interpretation of a [water law] statute is persuasive.").

We recognize that the general venue statutes refer to changing "the place of *trial*," NRS 13.010; NRS 13.040; NRS 13.050; *but see* NRS 13.030 (addressing venue in actions involving counties in terms of place the action was commenced), while review under NRS 533.450(1) is "in the nature of an *appeal*." However, this does not defeat their application in this context. *See* NRS 533.450(8) ("The practice in civil cases applies to the informal and summary character of such proceedings, as provided in this section."). The general venue statutes apply to proceedings at the time they are initiated, not just to the eventual trial. Thus, a change of venue must be demanded "before the time for answering expires," NRS 13.050(1), and "[w]hen the place of trial is changed, all other proceedings shall be had in the county to which the place of trial is changed . . . ." NRS 13.050(3). This court has long drawn on procedures and law applicable to civil actions generally in water law cases, to the extent consistent with the governing statutes, *see Carpenter v. District Court*, 59 Nev. 48, 53, 84 P.2d 489, 491 (1938), *aff'g on reh'g Carpenter v. District Court*, 59 Nev. 42, 73 P.2d 1310 (1937). While the lack of a full record or a decision as to venue by the district court prevents this court from deciding venue in this opinion, on remand, the district court may, in deciding the motions to change venue that remain, draw on NRS Chapter 13 to the extent appropriate.

## III.

In vacating the district court's jurisdictional dismissal and remanding for a determination of venue, we do not address standing or comity and do not decide the merits of Churchill County's and the Tribe's claims that Ruling 5823 affects cognizable interests of theirs. We hold simply that the district court erred in dismissing these appeals for want of subject matter jurisdiction on the basis that the location of the applicants' water rights controls.

CHERRY, C.J., and GIBBONS, DOUGLAS, HARDESTY, SAITTA, and PARRAGUIRRE, JJ., concur.

---

[8]In his supplemental brief, the State Engineer asserts that "the question before this Court [is] proper venue" and that, as the "ultimate question of what the nature or extent of the relative rights [of the protesters] are under Nevada law" remains unresolved, this court should be "circumscribed in its language in ruling on the venue question."